NEMAHA VALLEY DRAINAGE DISTRICT, APPELLEE, V.
GEORGE F. MARCONNIT, APPELLANT.

FILED JANUARY 3, 1912.   No. 16,628.

1. **Drains: ASSESSMENTS: APPEAL.** It is sufficient to confer jurisdiction on the district court on appeal from a hearing upon objections to the assessment of lands to pay the cost of the improvement by the board of supervisors of a drainage district organized under the provisions of chapter 161, laws 1905, if the "secretary shall make and file a transcript of said hearing, together with all the papers relating thereto, with the clerk of the district court in which said matter has been appealed."

2. **Constitutional Law: DRAINAGE ACT: CLAIMS FOR DAMAGES.** The amendment made in 1909 of chapter 161, laws 1905, commonly known as the "Peabody Act," by which certain provisions providing for the filing of claims for damages and a hearing thereon before the board of supervisors in connection with the assessment were omitted from the amended act, *held* not to render the amended act unconstitutional, as being in violation of section 21, art. I of the constitution.

3. **Drains: ESTABLISHMENT: ASCERTAINMENT OF DAMAGES.** In the taking or damaging of private property by a drainage district corporation in carrying out the purposes of its organization, the same principles apply as to the ascertainment of damages as in the exercise of the right of eminent domain for the location of.

a highway, the construction of a railroad, or like instances where private property is taken or damaged for public use.

4. ———: ———: ———: ACTION AT LAW. The fact that a special proceeding is not provided for in the act in question for the ascertainment of damages to land not actually taken does not interfere with the right of a landowner to maintain an action at law to recover his actual pecuniary loss, if any.

5. ———: DRAINAGE DISTRICT CORPORATIONS. A drainage district corporation founded under chapter 161, laws 1905, by the terms of section 37 is a body politic and corporate, and may sue and be sued.

6. ———: DRAINAGE DISTRICTS: BOARD OF SUPERVISORS: JURISDICTION. Where an engineer was appointed to make a survey, estimate and report for a drainage district, under the act of 1905, a topographical survey and maps and profiles made in substantial conformity with the provisions of the act as it then stood, which were filed in January, 1909, were sufficient to vest the board of supervisors with jurisdiction.

7. ———: ———: PETITIONERS: POWER TO LIMIT CORPORATION. A person signing articles of incorporation for the formation of a drainage district under chapter 161, laws 1905, cannot limit the powers of the corporation as to the manner in which the territory within the district shall be drained by expressions in the petition filed for the purpose of the formation of the district.

8. ———: ASSESSMENT OF BENEFITS. Where a general plan or scheme adopted for a drainage district consisting of over 20,000 acres of land in a river valley provides, as a part of the plan, for the straightening and cleaning out of the channel of the river and the excavation of certain lateral ditches, in order to more quickly dispose of water from overflow and that arising from surface waters flowing into the district from high lands adjoining, and the evidence shows that the lateral ditches are necessary to the complete carrying out of the plan or scheme, the mere fact that some of these laterals are not so situated as to confer a direct and immediate benefit on a landowner within the district cannot operate to relieve his land of its fair proportion of the common burden.

9. ———: ———. The fact that an exact measurement of the benefits which may accrue to lands within a drainage district cannot be made with mathematical accuracy until after the completion of the scheme does not render the damages so speculative and conjectural in their nature as to be impossible of ascertainment before the improvement is made.

10. Evidence examined, and *held* sufficient to sustain the findings and judgment of the district court.

APPEAL from the district court for Nemaha county: JOHN B. RAPER, JUDGE. *Affirmed.*

*E. B. Quackenbush* and *Fred G. Hawxby,* for appellant.

*Kelligar & Ferneau, contra.*

LETTON, J.

In June, 1906, proceedings were begun in Nemaha county for the purpose of organizing a drainage district under the provisions of chapter 161, laws 1905, commonly known as the "Peabody Act," which resulted in the creation of a drainage district corporation. An engineer was employed by the board of supervisors, who made a survey and prepared and filed maps and plans with a report ascertaining and apportioning the benefits to each tract of land within the district. The board of supervisors then notified the owners of property affected of the time and place when and where objections to the report of the engineer and to the proposed assessment of benefits and to all other matters and things connected with the assessment could be heard. Much the greater number of property owners made no complaint, but a number of objections were filed, and separate hearings were granted to each objector. The board of supervisors in each case took testimony both on behalf of the objectors to the assessment and in support of the engineer's report, and personally inspected each tract or parcel of land as to which the proposed assessment was contested. A number of changes were made by the board at the respective hearings, and such changes, when made, reduced the amount of the assessment or operated to exclude from the district certain tracts included by the engineer, and the assessment of which was complained of. An appeal was taken from the board of supervisors to the district court, where hearings were had and decrees rendered, and from

such a decree Mr. Marconnit, a landowner and objector, has appealed to this court.

1. The transcript filed in the district court recited the objections filed by each appellant to the report of the engineer, the proceedings at the hearing before the board, and the final decision of the board on the matter. The jurisdiction of the district court was challenged on the ground that no sufficient transcript had been filed; the argument being that a complete record of all proceedings in the organization of the district, including the report of the engineer, should have been filed on appeal. We think this was unnecessary to confer jurisdiction. The statute. (laws 1909, ch. 147, sec. 17) requires that, after an appeal bond is filed, the "secretary shall make and file a transcript of said hearing, together with all the papers relating thereto, with the clerk of the district court, in which said matter has been appealed. Upon the filing of said transcript and bond the said district court shall have jurisdiction of said cause, and the same shall be docketed and filed as in appeals in other civil actions to said court, and said court shall hear and determine all such objections in a summary manner as a case in equity, and shall increase or reduce the amount of benefit on any tract where the same may be required in order to make the apportionment equitable. All objections that may be filed shall be heard and determined by said court as one proceeding and only one transcript of the final order of the board of supervisors fixing the apportionments or benefits shall be required." A complete transcript showing the organization of the corporation and the final order of the board fixing the apportionment appears in the record, being offered in evidence in the district court. We are of opinion that the court acquired jurisdiction by the filing of a transcript of the proceedings upon the objections of appellant. The meaning of the provision that "only one transcript of the final order of the board of supervisors fixing the apportionments or benefits shall be required" is not quite clear; but, the entire proceedings leading up to the assessment

being in the record, there was sufficient before the court to allow the appellant to call to its attention any matter which he believed affected his interests injuriously, and this would seem to comply with the intent of the statute.

2. It is insisted that the statute as amended in 1909 is unconstitutional for the reason that the amendment took away from the landowner the right to recover any damages he might suffer by reason of the proposed improvement, by omitting certain provisions as to such damages; that it was the evident intention of the legislature of 1909, by omitting these provisions, to compel him to suffer damage to his property without compensation; and that hence the amended act violates section 21, art. I of the constitution. Section 12 of the original act (laws 1905, ch. 161), which section was not affected by the amendment of 1909, provides generally for the condemnation of right of way, and further provides that, after the appointment of appraisers, "the same proceedings for condemnation of such right of way shall be had, in all other respects, as is provided by law for the condemnation of rights of way for railroad corporations, the payment of damage and the rights of appeal shall be applicable to the drainage ditches and other improvements provided for in this act." The provision of the act as amended seems to leave the law as to damages in much the same condition as that with reference to the ascertainment of damages to property occasioned by the construction of a railway or the opening of a highway. In such proceedings the appraisers, and on appeal the jury, must allow the landowner the value of the land actually taken, and incidental damages to that portion of his land not appropriated, less any special benefit which may accrue by reason of the improvement. *Wagner v. Gage County*, 3 Neb. 237. In the taking of property for a drainage district these principles apply, as modified in *Gutschow v. Washington County*, 74 Neb. 794. *Martin v. Fillmore County*, 44 Neb. 719; *Dodge County v. Acom*, 61 Neb. 376. It is held by some courts that such provisions in a constitution apply only

to the exercise of eminent domain, and are no defense in proceedings to specially assess property for special improvements according to benefits (*Keith v. Bingham*, 100 Mo. 300, 13 S. W. 683; *Householder v. City of Kansas*, 83 Mo. 488); the thought being that, the assessment being made under the taxing power and the damages being caused by the exercise of the right of eminent domain, one cannot be offset against the other, although the party injured may have his action under the constitution for the damages sustained. But this question is not involved here and is not decided. It is also said by appellant in this connection that an action cannot be maintained against the district for damages in the absence of express statutory provision therefor, and that hence if lands are not actually taken, but only incidentally damaged, the injured party has no means of recovery. But a drainage district formed under this statute is a public corporation (*Drainage District No. 1 v. Richardson County*, 86 Neb. 355) and, as such, liable to pay for lands taken or damaged whether the obligation is enforced by condemnation proceedings or by civil action. Under section 37 of the act it may sue and be sued. The constitution is the supreme law; and, even if the statute failed to provide a special proceeding against the corporation for damages, the mere failure to do so will not operate to take away from a person damaged his right to the ordinary process of the law to ascertain and recover the same. *Chicago, R. I. & P. R. Co. v. O'Neill*, 58 Neb. 239, and cases cited. We think no such change was made by the amendment of 1909 as to render the amended act unconstitutional.

3. It is argued that the court had no jurisdiction because no complete topographical survey of the district had been made and filed as required by law. The engineer's report is accompanied by detailed maps and profiles of the proposed work in accordance with provisions of section 9, ch. 161, laws 1905, which was in effect when the survey was made and maps filed. At that time the statute required the engineer to make "a topographical survey,"

and to submit to the board "maps and profiles of the same" and a full and complete plan for drainage, etc. The amendment of 1909 makes no substantial change, except to say that there shall be a "complete" topographical survey. The witness Munn, who was the engineer in charge, stated upon the witness-stand that the maps filed did not show a "complete" topographical survey, but that he had made a topographical survey proper for such an enterprise, and that the maps and profiles showed all the elevations necessary for the work, that he took 10 to 14 elevations upon each 40 acres, and that, although there are no contour lines marked, the maps and profiles are sufficient to indicate the lands which would be benefited by the improvement, and gave the information necessary to enable contractors to estimate and bid upon the work. While a more minute survey and more detailed maps showing contour lines at short intervals could have been made, the maps and profiles in evidence seem to be in substantial compliance with the statute, and were sufficient to inform the landowners, the board of supervisors and the district court of the scope and extent of the proposed improvements and the lands which would be affected thereby.

4. In the execution of the general scheme of improvement, a number of lateral ditches are provided for which are designed to relieve part of the land, which is liable to overflow in times of flood in the Little Nemaha river, from excessive accumulations of surface water coming from other sources, and which accumulations find their discharge by way of the river. One of these laterals is a distance of several miles from the lands of the appellant. He claims that the drainage district had no power to include the construction of such laterals within its scheme or plan of drainage, for the reason that, when he signed the petition for the creation of a drainage district, the object and purpose expressed was to straighten the channel of the Little Nemaha river by changing the channel where necessary, and cleaning the old channel, and do

"any and all things which the board of supervisors of said district may deem necessary to straighten and clean out the channel of said river, and to prepare, protect and maintain said improvements." It is said that the inclusion of lateral ditches in the plan was beyond the power of the corporation, and that an assessment based upon such a scheme could not bind the appellant, who had never consented to the same. The power to create a drainage district corporation is conferred by section 1, ch. 161, laws 1905. Under its provisions "a majority in interest of the resident owners in any contiguous body of swamp or overflowed lands in this state  *  *  *  may form a drainage district for the purpose of having such lands reclaimed and protected from the effects of water, by drainage or otherwise, and for that purpose may make and sign articles of association, in which shall be stated the name of the district, the number of years the same is to continue, the limits of the proposed drainage district, which shall in no event embrace an area of less than 160 acres, the names and places of residence of the owners of the land in said district,  *  *  *  and said articles shall further state that the owners of real estate so forming said district for said purpose are willing and obligate themselves to pay the tax or taxes which may be assessed against them to pay the expenses to make the improvements that may be necessary to effect the drainage of the said lands so formed into a district," etc. It is further provided that, after the articles have been signed, they shall be filed in the office of the clerk of the district court in the county in which said drainage district is located. Section 2 provides for the service of notice of the filing of articles. Section 3 provides that all owners of real estate in the district who have not signed the articles shall file their objections in the district court, "if any they may have, why such drainage district should not be organized and declared a public corporation of this state." The provisions of the statute and the decree of the district court declaring the drainage district a public corporation con-

stitute the charter of the corporation. It will be seen that the corporation is formed "for the purpose of having such lands *reclaimed and protected from the effects of water, by drainage or otherwise,*" and the petitioners obligate themselves "to pay the tax or taxes which may be assessed against them to pay the expenses *to make the improvements that may be necessary to effect the drainage* of the said lands so formed into a district." Expressions in a petition indicating the manner in which the petitioners desire or would prefer to have the scheme of drainage carried out cannot control or fetter the corporation in the exercise of its discretion in the adoption of plans to carry out the purpose of its creation, and are mere surplusage. So long as the officers of the corporation keep within the powers conferred upon them by its charter, the petitioners cannot complain. To hold that an enterprise requiring technical skill and knowledge of a high degree in order to successfully prosecute the same, and necessitating the expenditure in some instances of hundreds of thousands of dollars, can be limited in such a manner would substitute the judgment of the unskilled for that of experts, and would subject the property of other owners of land in the district to the risk of being sacrificed in order to pay the expenses and costs of ill-advised and immature schemes. We are of opinion that the powers granted by the statute cannot be limited in such a manner. Moreover, we think the power of the corporation to carry out as a part of its general purpose the drainage of the lands included within the district from surface water, as well as that arising from overflows, cannot be questioned in this collateral manner.

5. It is next objected that the court erred with regard to the assessment of the cost of the laterals upon the appellant's land, when in fact he derived no benefit therefrom. The report of the engineer states: "The primary object of this undertaking is to reduce the numbers and extent of the overflows from the river. The work of reclaiming the valley lands is not complete, however, until

adequate surface drainage is provided.    Lateral ditches, 35 in number and aggregating 35 miles in length, have been laid out to complete the work of draining the valley." We think that the testimony bears out the conclusion that lateral ditches were proper and necessary in order to accomplish the result contemplated by the improvement. The method of assessment is explained in the engineer's report, as follows: "There are in round numbers 21,800 acres of land benefited by this improvement.    The maximum benefit to the land is estimated at $40 per acre.   In arriving at the degree of benefit to the various tracts, those lands receiving the maximum benefit were classified at 100, and other tracts receiving less than the maximum benefit were classed in percentages of the maximum. Land now worth $60 per acre that will ultimately sell for $100 per acre, when relieved of the uncertainty of overflow and is afforded ample drainage, is of course classified at 100.   Very wet swamp land now worth say $20 an acre that will be made safe from the overflows of ordinary years and the value of which would be to $60 an acre is also classed at 100.   *   *   *   The benefits to certain tracts are increased by the proposed lateral ditches.   The laying out of the lateral ditches in fact necessitated the including for benefits of land that otherwise would not have been listed.   After the land was scheduled by percentages the amount of benefit to each tract was arrived at by extending the number of acres in the tract by $40 if the tract was classified at 100, or at the per cent of $40 the land was classified at.   The cost of the improvement then apportioned to each tract bears the same ratio to the total cost that the amount of benefits bears to the total benefits."

It will be seen that, additional assessable land being brought within the district by reason of the laterals, the total cost was distributed over a greater number of tracts than before.   We have nothing before us to indicate that the assessment on the additional land brought in would not operate to equalize the added cost.   Moreover, it seems

clear from the testimony of the engineer and the elevations marked in the plats that the laterals were necessary to fully accomplish the drainage of the district, and that while the land of the appellant was not directly benefited by each lateral it was in fact benefited by the carrying out of the entire scheme. Without the laterals, it seems that water from excessive rains flowing into the valley from the higher land adjacent and water from unusual overflows would be retained in stagnant pools and ponds in various places, the remedying of which condition it was one of the principal objects of the improvement to effect. In the engineer's report the land throughout the district is not assessed at the same rate. He testifies that some of the lands assessed derive their principal benefit from the improvement in the channel of the river, while others are so situated that from the river improvement alone they would not receive the maximum benefit, without the aid to their reclamation afforded by the construction of the laterals, and that in making the assessment these elements were considered. The evidence shows the laterals were necessary to the drainage of the district, and the mere fact that some of them were not so situated with respect to appellant's land as to confer a direct and immediate benefit on it cannot operate to relieve his land of its fair proportion of the common burden.

6. It is objected that the benefits which may accrue are so speculative and conjectural in their nature that it is impossible to ascertain the same until after the construction of the improvements. This objection, however, would be equally applicable to proceedings for the ascertainment of damages occasioned by the laying out of highways or the building of railroads. Furthermore, if no assessment and levy could be made until after an improvement of this nature was completed, common prudence on the part of engineers and contractors would no doubt operate so that it would be a long time before the land would be relieved from overflow.

7. Appellant insists that the court erred in refusing a

trial of the issues in the case by a jury. This question, however, together with a number of other complaints with regard to the constitutionality of the act, was disposed of in *Dodge County v. Acom,* and in *Drainage District No. 1 v. Richardson County, supra,* and will not be noticed further.

8. We find no justification for the complaint that the board of supervisors was disqualified by reason of the fact that certain of the members were landowners in the district. The statute expressly requires that the board shall "be composed of owners of real estate in said district and resident of the county or counties in which such district is situated." Laws 1905, ch. 161, sec. 5. There is no evidence of and no complaint is made as to any misconduct on the part of any member of the board.

9. It is insisted that the court erred in many respects with regard to the admission and exclusion of evidence with relation to the lateral ditches, as to their effect upon the land in the district generally, the effect of the growth of vegetation in them, the necessity for their existence, and the effect that overflow would have upon them. The hearing was before the court, hence, under the settled rule, the admission of incompetent and immaterial testimony could not be prejudicial, and we are unable to find any prejudice to appellant by the exclusion of that which was offered by him and refused.

10. Having disposed of these general objections to the validity of the assessment, we come now to the complaint that the assessment against Marconnit's land as fixed by the board and confirmed by the court is too high and out of proportion to the assessment against other lands similarly situated. At the outset it is well to say that a uniform and exact apportionment of the benefits to each tract of land is an impossibility in most cases. The most that any officer or tribunal can do is to estimate the benefits to each tract upon as uniform a plan as may be in the light afforded by the evidence and by a personal examination and inspection. We have read the evidence with

much care in respect to the varying conditions in the three government subdivisions of Mr. Marconnit's land, the assessment as to which is in issue in this appeal. In considering his original complaint after a personal view of the land and the examination of witnesses, the board of supervisors found that certain portions were not benefited and should not be assessed, that part of it should be assessed on a basis of 60 per cent. and part of it at 100 per cent. Marconnit's own evidence shows that the land assessed is properly within the drainage district and subject to assessment. The estimate made by the witnesses in his behalf of the amount that the value would be enhanced by the construction of the improvement is much lower than that arrived at by the board and by the district court, but we are unable to say from a consideration of all the testimony produced that the finding and determination of the district court is erroneous. It is impossible within the limits which we are justified in devoting to this opinion to set forth in detail the evidence as to the value of each tract and the special benefit which it will sustain by the improvement. It is confused and indefinite at the best, and it is a difficult task for a reviewing court to form any just conception of actual conditions merely from the reading of the testimony. It seems clear that other land in the vicinity, lying at a lower elevation, and which would be covered with water when a portion of appellant's land was still above the flood, was also assessed at the rate of 100 per cent., but this alone is not sufficient to justify a finding that the assessment of these tracts is lacking in uniformity and is unjust and inequitable.

The appellant has not convinced us that the findings of the district court should be disturbed, and its judgment is, therefore,

AFFIRMED.

FAWCETT, J., not sitting.