# CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

## JANUARY TERM, 1914.

DRAINAGE DISTRICT, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED APRIL 17, 1914. No. 17,476.

1. Constitutional Law: DRAINAGE DISTRICTS: VALIDITY OF STATUTE. The drainage act of 1905 (laws 1905, ch. 161) reexamined, and paragraphs 1 and 2 of the syllabus in *Barnes v. Minor*, 80 Neb. 189, reaffirmed.

2. ———: ———: DUE PROCESS. Section 5, ch. 161, laws 1905, examined, and *held* not void as wanting in due process under the federal constitution.

3. ———: ———: EMINENT DOMAIN: COMPENSATION. Section 12, ch. 161, laws 1905, examined, and *held*, not void as authorizing the taking of property without due compensation to the owner thereof; nor does the fact that it allows a drainage district two years from the filing of the report of the commissioners or appraisers appointed to ascertain the compensation to be made to the owners or parties interested, within which to enter upon and appropriate the lands appraised, render the act void as being in conflict with section 13, bill of rights, constitution of 1875.

4. ———: ———: VALIDITY OF STATUTE. Section 36, ch. 161, laws 1905, examined, and its validity not determined, but *held*, that, even if void, its invalidity would not render the entire act void.

5. ———: ———: ———. The act of 1905 (laws 1905, ch. 161) examined *in re* the question as to whether or not the act is void in conferring public functions upon private corporations, and *Neal v. Vansickle*, 72 Neb. 105, and *Drainage District No. 1 v. Richardson County*, 86 Neb. 355, upholding the act, reaffirmed.

96 NEB.]        (1)

6. **Evidence: Sufficiency.** The evidence referred to, but not set out in the opinion, examined, and *held* sufficient to sustain the finding and judgment of the district court as to the benefits received by defendant from the system of drainage of the plaintiff district.

7. **Drains: Assessment: Railroads.** Section 19, ch. 161, laws 1905, examined, and *held* sufficient to authorize the legislature to confer upon the supervisors of a drainage district, organized under such act, the power to assess a railroad company for special benefits accruing to it from a drainage improvement, the same as private individuals, and in proportion to the benefits conferred by such district.

8. ———: ———: ———: **Offset.** The defendant, for the protection of its railroad right of way, road-bed, bridges and other property, dug two ditches, in and by which the channels of the Nemaha river and Linn creek were straightened at two given points within the limits of the district subsequently organized by plaintiff, thereby accelerating the flow of water in those streams, and to the extent thereof specially benefiting defendant's property. After the organization of plaintiff district it inaugurated a general system of drainage, which consisted of straightening the channels of said two streams from points above to points below the ditches so dug by defendant, and, in digging its ditches for the purpose of carrying out such general system of drainage, it extended the ditches so dug by defendant, both above and below such ditches, thereby appropriating the same and making them a part of its general system of drainage. *Held*, that defendant is entitled to set off, against the special benefits which it has derived from the entire scheme of drainage, that portion of such benefits as was caused by the work which it had itself done in producing those benefits; and that the rule for determining the amount of such offset is the sum which it would have cost plaintiff to dig those portions of its general drainage ditches which the defendant had previously dug.

APPEAL from the district court for Pawnee county: JOHN B. RAPER, JUDGE. *Affirmed on condition.*

*Byron Clark* and *C. C. Flansburg*, for appellant.

*Kelligar & Ferneau* and *A. R. Keim*, contra.

FAWCETT, J.

Defendant appeals from a judgment of the district court for Pawnee county, in a trial had in that court on an appeal by the defendant from the action of the board of

supervisors of plaintiff, fixing the amount of special bene-
fits accruing to the defendant from the operations of
plaintiff in providing new channels and straightening the
Nemaha river and Linn creek, in Pawnee county. The
several assignments of error presented and argued in de-
fendant's brief will be considered in the order in which they
appear therein.

The first assignment assails the constitutionality of the
law under which the plaintiff district was organized, being
the act of 1905. Laws 1905, ch. 161. This assignment is
divided into subdivisions from A to F, inclusive.

Under subdivision A it is claimed that "Corporations,
under the constitution, must be created by general law.
A law giving courts the power in their discretion to create
corporations by judicial decree violates such provision."
We think the point here made is fully covered and cor-
rectly disposed of adversely to defendant's contention in
*Barnes v. Minor,* 80 Neb. 189.

In subdivision B it is contended that "the act of 1905
is void as denying the equal protection of the laws under
the federal constitution." In *Barnes v. Minor, supra,* it
is said (p. 194) : "It seems clear that neither a county
nor a railroad company, under the circumstances shown
to exist in the case at bar, is a necessary party to the
proceeding in the district court to declare the drainage
district a public corporation." Counsel say in their brief
that this construction by the court is the basis for their
second contention; that the drainage law is unconstitu-
tional because it denies to the railroad company the equal
protection of the law. It is argued that a railroad com-
pany, by this holding, cannot become a member of the
drainage district, cannot be incorporated within the bound-
aries or be a member of the drainage district, so that it
is unnecessary to name it as a landowner or to summon
it into court as other landowners are brought in; that
every other landowner is summoned, has a right to appear,
and under section 3 of the act may file objections; that, act-
ing under the construction of the statute given in *Barnes
v. Minor, supra,* defendant was not brought into court and

given an opportunity of showing those things which other persons, who were brought in, were permitted to show. We think the discussion in *Barnes v. Minor, supra,* fairly answers the argument made on this point. In that opinion it is said (p. 193) : "From the nature of quasi public corporations, such as counties, and public service corporations, like railroad companies, it would seem clear that neither of them could become a member of a drainage district. From the very nature of their organization, and the powers conferred upon them by law, they would be unable to exercise the duties and claim the privileges required of and given to private owners of land situated within such district." As argued by counsel for plaintiff in their brief, if a railroad company is assessed for a benefit arising from the construction of a drainage improvement, and it has notice of the assessment, and a time and place fixed for a hearing, and actually is heard on its objections, and is accorded an appeal to the courts on the justice of such assessment, it occurs to us that such company has had due process of law, and the equal protection of the law, and it is not in a position to complain because it was not summoned into court as a party on the preliminary proceedings for the organization of such district.

In subdivision C it is argued that "the act is void as wanting in due process under the federal constitution." The gist of this contention is that the tribunal which levies the assessment is disqualified by reason of the interest of the individual members comprising said board. This board is by statute made to consist of landowners within the district, and it is argued that they therefore sit in judgment, not only upon their own claims, to determine the amount of their own assessment, but the assessment of every other individual in the district; that a judgment by such a tribunal does not constitute due process. This contention was considered in *Nemaha Valley Drainage District v. Marconnit,* 90 Neb. 514, 525, and decided adversely to defendant's contention. The argument now made upon this point fails to shake our confidence in that case.

Under subdivision D it is argued that "the law is void because it authorizes the taking of private property without compensation to the owner thereof." Section 12 of the act provides that the drainage district shall have the right to the appointment of a commission to ascertain the compensation to be made to owners or parties for right of way; that the same proceedings for condemnation of right of way shall be had as provided by law in condemnation proceedings by railroads; that property shall not be entered upon or appropriated by the district until the damages awarded are paid to the county judge for the use of the owner; and that, if the property is not taken and paid for within two years from the time of condemnation, the proceedings shall abate at the cost of the district. It is argued that in the case at bar there is no fund whatever for the payment of defendant's right of way; that the special assessment may or may not be paid; that the amount of the levy may or may not be sufficient; that, until the fund is actually paid "or provided for," no condemnation can be had. It will be conceded that no condemnation can be had until the fund for the payment of the land is actually paid "or provided for." Under the provisions of section 24 of the act, a contract cannot be let until after the levy of the assessment provided for in section 18, and, of course, no lands are needed or are taken until the construction work is to be entered upon. The record shows the total benefits levied against the property in this district to be $331,555, which is levied against agricultural lands within the district. The cost of the improvements are estimated at $107,982, so that there remain benefits unlevied and uncollected, which are subject to levy and collection, to pay for right of way, damages, and other items of cost, over $200,000. As the assessments are by section 21 made a lien "against the said property assessed," the fact that the special assessments may or may not be paid can only depend upon the question as to whether or not the work is ever entered upon. In the present case, we are not left in doubt upon that point, as the work has been entered upon. The fear, therefore, that the special assessments may not

be paid, or that the amount of the levy may not be suffi-
cient, appears to us quite groundless. It is urged that it
is unfair to allow a corporation to condemn property and
appraise damages to-day and take no further action for
two years, and then, when the property has risen greatly
in value and the damages would be much enhanced, per-
mit the corporation to then elect to pay the damages and
appropriate the property. Possibly this may be unfair,
but it is within the law, as enacted by the legislature, and
we do not think is in conflict with section 13, bill of rights,
constitution of 1875.

Under subdivision E it is claimed that "the act is void
because it denies the right to enjoin void assessments, but
requires payment thereof to the county treasurer; denies
any recovery from the party to whom payment is made."
This refers to section 36 of the act, which provides that
the collection of assessments to be levied to pay for the
location, construction, maintenance or repair of any ditch,
etc., "shall not be enjoined nor declared void; * * *
and no injunction shall be allowed restricting the collec-
tion of any assessment until the party complaining shall
first pay to the county treasurer the amount of his assess-
ment, which amount so paid may be recovered from said
district in any action brought for that purpose in case
said injunction is made perpetual." We are unable to
discover the materiality of this assignment of error as
applied to the issues in this case. This is an appeal from
a judgment of the district court, based upon an appeal
from the action of the board of supervisors of plaintiff
district in levying an assessment against defendant over
its written protest and objections filed with and heard
by the board at the time of making the assessment. No
pleadings were filed in the district court, but the case was
tried there and must be determined here upon the issues
tendered by such protest and objections so filed with the
board. In those objections defendant objects to the ap-
proval of the engineer's report and every part thereof in
any manner affecting the classification of the lands of the
defendant or its right of way; objects to the apportion-

ment of benefits and to the proposed special assessment, and to everything connected with the proposed assessment of the lands, property, right of way, road-bed, and track of defendant, for the following reasons: (1) That the track, road-bed, and right of way of the defendant is not swampy or overflowed land, and does not come within the character of land embraced within the statute concerning the establishment of drainage districts; (2) because the establishment of the drainage district will not and cannot confer any benefit of any kind upon the right of way of defendant or upon its lands located within the district; (3) because the road-bed, track, and right of way cannot be affected or damaged by any flood in the Nemaha river and within the district that is likely to occur at any time, for the reason that defendant has at its own expense and at large cost raised its road-bed, traveled track, ties and property above the highest flood that can possibly occur in said river within the district; (4) because none of its land is swampy, marshy, boggy, or flooded, nor does its traveled track, road-bed, embankment and right of way cross or traverse any swampy, boggy, marshy or overflowed land, and no drain or ditch to carry off surface water from any of that character of lands within the drainage district could be of any possible benefit to the road-bed or right of way of defendant; (5) that the traveled track, road-bed, and right of way of defendant is elevated to such a degree that it is not subject to overflow, does not need the protection of any drainage canal, and would not be benefited in any manner or to any extent by the construction of the canal contemplated by plaintiff; (6) "because any assessment levied against the right of way lands, track, road-bed or property of this railroad company would be a taking of its property without any compensation, would confer no benefit upon this objecting railroad or its right of way, road-bed or other property mentioned." During the hearing, by leave of the board, defendant amended its objections so as to claim the sum of $18,000 against the plaintiff district on the ground that it appeared from the evidence at the hear-

ing and the plat filed that the project contemplated the adoption and use, as a part of plaintiff's plan, of the cut-off made by defendant in section 20, which it had made at its own cost and after purchasing the right of way therefor at a cost of $11,000, and also uses and adopts the work done in straightening Linn creek at a cost to defendant for labor and right of way of $6,000, and that the taking of such property by the drainage district, without any compensation, is in violation of the law and constitution. In the light of the issues as thus made, the only consideration we need now give to section 36 is to determine whether or not that section, even if void, would render the entire act void. We cannot so hold. An examination of section 36 shows that every provision therein might be stricken down without in any manner affecting or impairing the remainder of the act.

In subdivision F it is contended that "the act is void in conferring public functions upon private corporations." This point has been decided adversely to defendant's contention in *Neal v. Vansickle,* 72 Neb. 105; *Drainage District No. 1 v. Richardson County,* 86 Neb. 355. We are satisfied with our holding in those cases, and must decline to reconsider the question. It follows from what has been said that defendant's first assignment of error must fail.

By the second assignment it is contended that "there is no evidence to show that the railroad company would receive any benefit by reason of this improvement." The evidence upon this point is voluminous, so much so that we will not attempt to give even the substance of it. Suffice it to say that we have carefully examined the evidence submitted on both sides, and, while it must be conceded to be conflicting, it is not only ample to sustain the finding of the district court, but in our judgment preponderates in favor of the same.

By the third assignment it is contended that "there is no power, under the act, to lay any assessment against appellant." Under this head it is argued that, "before there can be laid an assessment against a railroad, under this act, there must not only be *'protection, derived from*

*the drainage works and improvements,'* but the benefit to
be assessed is limited 'to the *increased efficiency and value
added thereto* by reason of said improvements.' " Section
19 of the act confers power to assess a railroad for bene-
fits accruing from a drainage improvement "the same as to
private individuals, and in proportion to the benefits con-
ferred by said ditch." We are unable to discover any rea-
son why the legislature has not the right to confer this
power upon a drainage district. The only reason any
property owner within the district can be assessed is be-
cause his property is benefited by the improvement, for,
unless benefits accrue, there is no liability to assessment.
If, therefore, a railroad company derives protection to its
road-bed, bridges, and depot grounds, there is no reason
why it should not be assessed, as increased efficiency and
added value necessarily follow from such protection. In
this case the defendant company had nine miles of road-
bed, at least two bridges, and valuable depot grounds with-
in the limits of the district. While the evidence is con-
flicting, it is ample to show that the improvements made
by plaintiff have been of great value to defendant as to all
of these items of property. It shows that, by reason of the
straightening of the Nemaha river and Linn creek, the de-
fendant's embankments and other property are relieved of
the accumulation of water after heavy rains in one-fourth
of the time that it was relieved before plaintiff's improve-
ments were made, and that the work has resulted in les-
sening the amount of care and work upon the road-bed, in
the protection and care of its bridges, and in the delay of
its trains, incident to the action of the water prior to the
making of the improvements. That such a result is a ma-
terial benefit to the railroad and a manifest increase of its
efficiency and added value must be apparent even to a
layman in such matters. The estimate of this value in dol-
lars and cents may be problematical, but so are many other
questions of fact which courts are called upon to decide.
As said in *O'Brien v. Schneider,* 88 Neb. 479, 482: "No
system of assessment can bring about absolute equality
or attain exact justice among property owners or taxpay-

ers. The best that can be expected is a substantial approximation of burdens according to benefits, and the legislature is vested with great discretion in providing the methods by which that approximation shall be attained."

By the fourth assignment it is contended that "the railroad has a right to offset, against any assessment for benefits, the value of its property taken and used by the drainage district in making improvements and not paid for by said district." It appears that before the plaintiff district was organized defendant at its own expense purchased a strip of land one-half mile long and 350 feet wide, and dug a canal across an ox-bow of the Nemaha river, by which the river was diverted into this channel and its course thereby straightened, at a cost of about $11,000, and that at a cost of about $6,000 defendant made a similar straightening of the channel of Linn creek. By the general scheme of drainage adopted by plaintiff it is appropriating the work thus done by defendant. The straightening of the channels of the Nemaha and of Linn creek are both admitted by a stipulation of the parties. It is also stipulated that Linn creek is a regular water course with channels and banks, and that the Nemaha river is one of the regular streams of the state; that the plaintiff in laying out its plan of drainage straightened out Linn creek and the Nemaha river both above and below the channels cut by defendant. It is further stipulated: "(7) That the cut-off channels of both Linn creek and the Nemaha river thereby became part of and were incorporated in the canal and ditches of the said drainage district. (8) No condemnation proceedings were had, and no contract, or payment made by the drainage district to the railroad company for either of the cut-off channels. (9) That, if the drainage district had made the channel on Linn creek which was excavated by the said railroad company, it would have been compelled to purchase 2 acres of right of way at $60 per acre, and excavate 7,310 cubic yards of earth at 10 cents per yard, and to have grubbed out 76 squares at a total costs of $851; that, if the drainage district had made the channel on the Nemaha river which

was excavated by the said railroad company, it would have been compelled to purchase 8½ acres for right of way at $60 per acre, and excavate 27,600 cubic yards of earth at 8.25 cents per yard, at a total cost of $2,787. It is agreed that the two blue-prints marked defendant's exhibit 3 are correct representations of the location of the cut-offs mentioned and the territory through which the streams mentioned pass."

. An examination of the blue-prints referred to shows that the two cuts made by the defendant company now form a part of the continuous scheme of the straightening of these two streams. The defendant contends that, plaintiff having appropriated "the labor and property of the railroad company, built by the railroad company for its own protection," it must pay to the railroad company "the reasonable value of its property." Plaintiff contends that there is no legal theory upon which it can become liable to the railroad company for the expense incurred by it in the construction of these cut-off channels, for the reason that it is not claimed that liability in this respect rests on contract, express or implied, and that, if the defendant can offset or recover in any manner the expense of this work, it must found its claim on some recognized theory of legal liability. It is argued that these improvements were made in 1897, long before the drainage improvements were deemed necessary or even possible in that section of the state; that the expense was incurred in the betterment of the track, grade and embankment of the defendant, and to enable it to keep its track in condition for transportation of goods and passengers; that when a cut-off is constructed from one bend to another, and the water of a stream flows through the cut-off, then the cut-off is the river, just as much as any other portion of the stream; that this is just as true of Linn creek and of the Nemaha river, and the stipulation agrees that each of the cut-off channels became part of the stream; that the company could not claim any proprietary interest in either of these streams, or that it had any power to change the course of the running waters of either, and the fact that

neither the state nor any private citizen interfered to prevent such use of the streams cannot be construed as imparting life or vitality to its claim for compensation; that defendant's act in this respect was a violation of the public right in these streams, and cannot be made the basis of a claim of legal liability against any other corporation which comes along later and lawfully and rightfully employs the channel as part of a public improvement; that plaintiff did nothing which in any manner affected the rights, interests or property of the defendant; that, when it examined the valley with a view to designing drain improvements, this cut-off channel was found in operation, and what plaintiff did was to construct similar channels above and below on lands purchased by it, and the waters of the stream still continue to flow through the railroad cut as they formerly did; that, even if some legal principle existed upon which a liability for the claim could be predicated, a set-off or counterclaim cannot be presented and sustained in this proceeding; that under certain sections of the act the board of supervisors, acting on the report of the engineer, and after due notice, hears all objections which property owners desire to present to the proposed assessment of benefits, and this procedure includes railroads; that after ascertaining the benefits to all property within the district the drainage board fixes and assesses the benefits, assessing to each property its due proportion, and then apportions the cost of construction to each property; that from this procedure any person aggrieved may appeal; that under other sections of the act a different procedure is provided for the ascertainment of any damages that arise out of or for the construction of the improvements, which procedure ultimately leads to a trial by jury; that this is true, whether the damage comes from a direct condemnation action, or flows indirectly from some other form of injury; that it thus appears that, in the ascertainment of the amount of benefits and the levy of the amount of tax for apportionment of cost of construction which will be paid by any particular property, the forms of procedure are practically the same as

those employed under the general law for the ascertainment and levy of any other form of tax for the use of city, county and state governments; and that the ascertainment of damages, if any, is a regular court proceeding, culminating in a jury trial; that under this condition of legislation damages or claims in the nature of set-off or counterclaim cannot be used against the levy, assessment or collection of benefits, unless the statute under which the proceeding is held so provides, and that in this statute there is no authority for any such proceeding; that in *Nemaha Valley Drainage District v. Stocker,* 90 Neb. 507, a claim for damages was made in a similar proceeding, and both the trial court and this court disregarded such claim and refused to consider the same in arriving at the amount of benefits. They also refer to *Nemaha Valley Drainage District v. Marconnit,* 90 Neb. 514. In the *Stocker* case the point under consideration, so far as it appears there, is held to have been ruled by *Nemaha Valley Drainage District v. Marconnit, supra.* In the latter case, on pages 518 and 519, to which counsel for plaintiff particularly refer, after considering the point raised, it is said: "But this question is not involved here and is not decided." They also cite cases to the effect that an assessment on land to pay for levies must be paid without regard to any claim for damages or compensation the owner may have against the district, the statute authorizing the assessment making no provision for set-offs for such claims; that a special assessment is a tax, and that a tax is not liable to counterclaim or set-off, nor is it subject to execution or attachment; that the general trend of authority everywhere is to the effect that taxes are not debts in the ordinary sense of that term, but enforced contributions made by the state, which are neither the subject of set-off, nor may they be used for that purpose.

We do not think the cases cited should be applied to the case at bar. We think the facts stipulated by the parties present the situation in this case thus: Plaintiff is seeking to assess the defendant for benefits accruing to it from a general system of drainage by straightening for a con-

siderable distance the channels of the Nemaha river and Linn creek. This straightening of the channels of these two streams extends from points above to points below the road and other property of defendant. For a certain distance the channel of each of these streams had already been straightened by and at the expense of the defendant. Defendant has been specially benefited by this system of drainage, but it was benefited by that part of the system which it made before the plaintiff district made its part. To the extent that defendant was benefited by what it had done in the way of straightening these two channels prior to the organization of the district, the district by its operations has not benefited the defendant. If the defendant had not done this work itself, the plaintiff would have been compelled to do it. In that case the entire benefit which the defendant derives from the drainage scheme would have been properly assessable against it; but we are unable to see why it should be assessed for benefit which it has received from the work which it had itself done. To so hold would be unjust and inequitable. To the extent, therefore, of the expense which the plaintiff would have had to bear had it done the work which the defendant had already done, the defendant has not been benefited and should not be assessed. It is not, therefore, strictly speaking, a case of taking property from the defendant. Conceding that the defendant had no proprietary right in the channel of the river which it had created, we nevertheless think that it had a right to have deducted from the benefits which it has derived from the entire scheme of drainage by straightening these rivers the value of what it has itself done in producing those benefits.

In *County of Blaine v. Brewster*, 32 Neb. 264, Brewster owned a bridge across the North Loup river. The county commissioners subsequently located a public road to and over the bridge and appropriated the same by the public. An appraiser was appointed by the commissioners, who fixed the value of the bridge at $610. A claim for that amount was filed against the county and rejected by the board. Brewster then appealed to the district court,

where judgment for the amount of his claim was rendered in his favor, and that judgment was approved by this court. In the concluding paragraph of the opinion it is said: "A public road was created in this case across the bridge, evidently for the purpose of enabling the county to appropriate the bridge in question. It thereupon be-came a public bridge and has been used by the public ever since. It is but justice, therefore, that the defendant in error be paid the value of the same." Bearing in mind the fact that Brewster's bridge was across a public stream, in which he had no proprietary right, the analogy becomes plain. In that case the public laid out a road to each end of the bridge and appropriated the bridge. In the case at bar the district located ditches both above and below and connecting with the ditches which had been dug by the defendant. It thereby appropriated the work which the defendant had done in digging those ditches. We think it is but justice, therefore, that the defendant be allowed the value to plaintiff of defendant's contribution to the continuous ditch which now constitutes the main work of improvement done by the plaintiff, and for which it is levying an assessment upon property within the district. The stipulation shows that, if plaintiff had dug the two channels which had been dug by the defendant, the cost to it would have been: For the cut in the Nemaha river $2,787, and for the cut in Linn creek $851, a total of $3,638. This amount the court should have permitted defendant to offset against the amount of benefits as found by the court.

If plaintiff, within 60 days from the handing down of this opinion, enters a remittitur in this court of $3,638, the judgment of the district court will stand affirmed. Failing so to do, the judgment will stand reversed, and the cause remanded.

AFFIRMED ON CONDITION.

LETTON, J., dissenting in part.

I am unable to concur in the doctrine set forth in the eighth paragraph of the syllabus. To hold that this court

has the right or the power arbitrarily to assume that the cost of excavating the cut-off channel is a proper deduction to be made from the special assessment of benefits made by the proper officers of the district, and has jurisdiction to offset the same against the sum assessed, is, in my judgment, opposed to every authority upon the subject, and is unauthorized by law. No authority has been presented by the appellant or in the opinion to sustain such an offset, and every authority I have been able to find is directly against it. "In the absence of specific statutory provision, no set-off can be allowed." 1 Page and Jones, Taxation by Local and Special Assessments, sec. 73, citing many cases. The question is fully discussed in *Hedge v. City of Des Moines*, 141 Ia. 4.

The statute requires the engineer, in the first place, to make an estimate of the benefits sustained, and provides for the filing of objections before the board of supervisors to the assessments stated in his report; that a hearing shall be had upon such objections, and if the board finds the "assessment of benefits to the lands and other property to be in any respect inequitable, either less than or in excess of the benefits accruing to the lands and property from the drainage improvements, or in any particular unfair or unjust, they shall so order, and they shall thereupon so amend, adjust and equalize the classification and benefits as may appear fair, just and equitable to them." Rev. St. 1913, sec. 1822. An appeal may be taken to the district court, which "shall hear and determine all such objections in a summary manner as a case in equity, and shall increase or reduce the amount of benefit on any tract where the same may be required in order to make the apportionment equitable." Section 1824. Section 1816 of the same statute gives the district the right to acquire "any real estate, easement or franchise" necessary for right of way, and provides that damages shall be paid. It was settled in the early history of this state that county commissioners or other boards with special powers granted by statute could exercise no powers not specifically granted to them or incidentally necessary to carry them into ef-

fect (*McCann v. Otoe County,* 9 Neb. 324; *Lancaster County v. Green,* 54 Neb. 98) ; and it is equally well settled that upon appeal from such tribunals neither the district court nor the supreme court is vested with any greater or wider jurisdiction than that conferred on the original tribunal. *Blaine County v. Brewster,* 32 Neb. 264, cited in the opinion, is not authority for the holding, but, on the contrary, supports the view taken by the writer.   In that case the county had taken the bridge, but proper proceedings had been taken under the statute to ascertain the damages by the appointment of an appraiser, and an award was made which the county refused to pay, but the courts on appeal enforced.

Appellant argues that this is an equity case, and that a court of equity having obtained jurisdiction will retain it for all purposes; but this is a mistake.   While under the statute the procedure on appeal follows the method in courts of equity, the whole proceeding is purely statutory, and neither the district court nor this court has any greater powers than the board of supervisors of the drainage district.

If the original estimate of the engineer or the findings of the board of supervisors had shown that the benefits to the road-bed, etc., derived by the railroad company by reason of the excavations made by it which had been taken and used by the district amounted to a definite sum, and that the total benefits to its property within the district by reason of the general scheme of drainage had amounted to a greater sum, an assessment derived by deducting the partial benefits caused by the excavations, from the total benefits derived from the general scheme would show the actual benefits derived, but there is no evidence in the record upon which such an assessment can be predicated. The testimony of the engineer for the district is that the benefits to the whole nine miles of road amount to a definite sum, and there is no proof as to the monetary value of the benefits arising from the construction of the short cut-offs.

For these reasons, I cannot agree to the proposition embraced in the eighth paragraph of the syllabus or that portion of the opinion upon which it is based.

SEDGWICK, J., dissenting.

I think that the supervisors of the district in determining the benefits received by any person or corporation should consider all the equities arising in favor of the person whose benefits they are determining, and the courts should do the same on appeal. The benefits to the railroad company by the improvements of the district should be determined by considering the improvements made by the railroad company itself, and the company should be held liable only for the additional benefit caused by the district improvements, as expressed in the dissenting opinion of Mr. Justice Letton. I cannot agree to the rule expressed in the eighth paragraph of the syllabus.