Allen, J.
Plaintiff in error claims that the sole fact that Geiger, one of the commissioners acting in the road proceedings, owns land within one-half mile of the proposed improvement, and that his land will be specially assessed to pay the cost of the improvement “mates him a judge in his own case,” disqualifies him from voting upon all proceedings relative to the road in question, and renders the road proceedings void. It must be conceded that under the law Geiger cast the deciding vote in the *570 meetings of September 13, 1922, and October 11, 1922. The resolution of September 13 was passed without petition therefor, and hence under Section 6910, General Code, was required to be unanimous, and the resolution of October 11 was passed by a majority vote only; that is, if Geiger had voted “nay,” instead of “aye,” both of the resolutions would have been lost. Upon the fact of Geiger’s qualification or disqualification to vote upon these resolutions rests the solution of this case.
There is certain authority upon the question laid down in the state of Ohio. The third paragraph of the syllabus in Thompson v. Love and Jamison v. Love, 42 Ohio St., 61, reads as follows:
“3. A county commissioner, or a surveyor, or engineer, or county auditor, is not disqualified to act by reason of the fact that he owns and resides upon land within the two miles to be assessed, and has signed the petition for the improvement.”
Counsel for plaintiff in error contend, however, that The Thompson case differs from the case at bar in the fact that the road improvement law at the time covered by the Thompson case did not, as today, provide that a road proceeding should be initiated by the county commissioners. He points to the fact that the statute then provided that a petition should be signed by at least five landholders whose lands were to be assessed for the construction of the road, and that when this was done the commissioners should appoint three disinterested freeholders of the county as viewers, and a competent surveyor to proceed to examine, view, lay out, or straighten the road as in their opinion public convenience and utility required.
*571 Moreover, plaintiff urges that, when the report of the viewers and surveyor was filed under the former law, the commissioners could not make a formal order that the improvement be made until another petition had been filed, signed by a majority of the landholders. Thus plaintiff in error maintains that under the former law the commissioners had no discretion, that today the commissioners act with full discretion, and that the Thompson case therefore is not in point.
However, under the present law the assessments are made, not by the county commissioners, but by the county surveyor, upon actual view, in much the same manner as formerly by the viewers. Section 6922, General Code, reads as follows:
“As soon as all questions of compensation and damages have been determined, the county surveyor shall make, upon actual view, an estimated assessment upon the real estate to be charged therewith of such part of the compensation, damages, costs and expenses of said improvement as is to be specially assessed. Such estimated assessment shall be according to the benefits which will result to such real estate. In making such estimated assessment the surveyor may take into consideration any previous special assessments made upon such real estate for road improvements. The schedule of such estimated assessment shall be filed in the office of the county commissioners for the inspection of the persons interested. Before adopting the estimated assessment so made and reported, the commissioners shall publish once each week for two consecutive weeks in some newspaper published and of general circulation in the county, if there be any such paper *572 published in the county but if there be no such paper published in said county then in a newspaper having general circulation in said county, notice that such estimated assessment has been made, and that the same is on file in the office of the county commissioners, and the date when objections, if any, will be heard to such assessment. If any owner of property affected thereby desires to make objections, he may file his objections to said assessments in writing with the county commissioners before the time for said hearing. If any objections are filed the county commissioners shall hear the same and act as an equalizing board, and they may change said assessments, if in their opinion, any change is necessary to make the same just and equitable, and such commissioners shall approve and confirm said assessments as reported by the surveyor or modified by them. Such assessments, when so approved and confirmed shall be a lien on the land chargeable therewith.”
It will be observed that the first part of the above section corresponds with the pertinent portions of Sections 4833 and 4835 of the Revised Statutes (in force when the Thompson case arose), which read as follows:
“Sec. 4833. The viewers, and surveyor or engineer, shall meet at the time and place specified by the commissioners, and after taking an oath faithfully and impartially to discharge the duties of their appointments, shall take to their assistance two suitable persons as chain carriers, and one marker, and proceed to view, examine, lay out, or straighten such road, as in their opinion public utility and convenience require, and assess and determine the dam *573 ages sustained by any person through whose premises the road is proposed to be laid out, straightened, or improved. * * *”
“See. 4835. The viewers, and surveyor or engineer, shall make a report to the commissioners at their next regular session, showing the public necessity of the contemplated improvement, the damages claimed, and by whom, the amount assessed to each claimant, an estimate of the expense of the improvement, and the lots and lands which will be benefited thereby, and ought to be assessed for the expense of the same. * * *”
That portion of Section 6922, General Code, which relates to objections and hearing by the county commissioners, and the change of the assessment by the commissioners, also corresponds with Section 4838 of the Revised Statutes (which was in force when the Thompson case arose), which reads as follows:
“Sec. 4838. If at any time after making such final order the commissioners find that there has been an omission of lots and lands within the territory sought to be assessed, or that there has been manifest injustice in the apportionment of taxes, or that public necessity requires any alteration in the manner of the improvement as ordered, they may make such addition and re-apportionment as they deem just and proper, and such change in the improvement as will conform the same to the public requirement.”
It is true that under the old statute the county commissioners could not, without petition, initiate proceedings for a road improvement, the above sections of the present statute show that the county commissioners now act in much the same *574 capacity as they did in the Thompson case, excepting that viewers then took the place of the present county surveyor. Moreover, the fact remains that under the Thompson case the decision for the improvement was actually made by county commissioners and not by the viewers, nor by the surveyor, so that in that basic respect the two cases are similar.
See, also, Goodwin v. Commrs. of Van Wert County, 41 Ohio St., 399, which holds, at page 400, that “the ownership of land crossed by the ditch did not disqualify the commissioner from participating in the order made May 28,1878.” (The order of May 28 was an order, not to establish a ditch, but to vacate a previous order of the board of county commissioners establishing a ditch.)
While not so inconclusive as plaintiff in error contends, it is true that the Thompson and Goodwin cases are not completely satisfactory upon the point. Turning therefore to the general law upon the subject, we find that the strongest authorities for plaintiff in error’s contention are several decisions which hold that commissioners of a drainage district, who own land in the district, subject to assessment, irrespective of whether they act in good faith, are incompetent to make assessments or to assess benefits. Vandalia Levee and Drainage Dist. v. Hutchins, 234 Ill., 31, 84 N. E., 715; Commrs. of Union Drainage Dist. No. 1 v. Smith, 233 Ill., 417, 84 N. E., 376, 16 L. R. A. (N. S.), 292. Moreover, it is held that a member of a board of supervisors who casts the deciding vote on the establishment of a drainage district where he has a substantial property interest is disqualified to vote upon the *575 establishment of the drainage district. Stahl v. Board of Supervisors of Ringgold County, 187 Iowa, 1342, 175 N. W., 772, 11 A. L. R., 185. This case is a well-considered authority squarely in favor of plaintiff in error.
Various other authorities have also been studied in this connection. Some of the decisions, in order to avoid the rigidity of the above-mentioned rule, that an official owning land within a district subject to assessment, whether or not acting in bad faith, is incompetent to vote even upon the establishment of the assessment district, advance the principle that a public official is not disqualified to cast a vote upon administrative assessment matters, even although some evidence of prejudice exists. State, ex rel., v. Houser, Secy, of State, 122 Wis., 534, 100 N. W., 964. These cases thus distinguish, as to the disqualification of an official, between questions which are entirely judicial and those which are only quasi judicial or entirely administrative, apparently holding that an official is not “judge in his own case” when he does not act in a strictly judicial capacity. If this distinction be sound it determines this ease in favor of the defendants in error, for this court has held that the finding of a board of county commissioners is not a judicial act. Southard v. Stephens, Treas., 27 Ohio St., 649.
We cannot, however, ground our conclusion in this case upon such a distinction. If Geiger’s interest is substantially adverse to that of the public, as indicated by evidence tending to show that he acted in bad faith in voting upon these road proceedings, the fact that he is not sitting in a court should not permit him to be the deciding factor in levying spe *576 cial assessments upon Ms own property, together with that of his neighbors.
Other decisions likewise, in order to avoid the rigidity of the above-mentioned rule, draw a distinction between votes cast by interested officials in decisions from which there is appeal and those cast in decisions from wMch no right of appeal is provided. Vandalia Levee and Drainage Dist. v. Hutchins, 234 Ill., 31, 84 N. E., 715, cited by plaintiff in error, distinguishes on tMs precise ground several Illinois cases apparently contra. Thus, if the right of court review to the action of an assessing body is granted, there are certain cases which hold that a pecumary interest on the part of an official member of the assessing body will not disqualify him from voting. Scott, Exr., v. People, 120 Ill., 129, 11 N. E., 408; People, ex rel., v. Cooper, 139 Ill., 461, 29 N. E., 872.
We are constrained to admit that the action of the county commissioners in tMs Ohio case is final, for no appeal from the specific action above set forth is provided therefrom by statute. If the reasomng of the courts which hold that an official’s vote should be disqualified when he acts with unlimited discretion in a case in which he has some pecuniary interest, unchecked by the right of judicial review, be held to govern this case, we must reverse the judgment of the Court of Appeals.
In this case the commissioner does, by his ownership of land in the assessable area, have some pecuniary interest in the proceedings, but there is no evidence whatever tending to show that Geiger has cast his vote adversely to the public interest. The petition does not even charge bad faith, nor fraud, in the. easting of his vote. He has taxed himself *577 equally with all other property owners in the county and township, and he has voted to place a heavy burden upon himself in the imposition of the tax. Does the mere fact of his ownership of real estate to be benefited by the improvement render Geiger ’s interest adverse to the interest of the taxpayers within .the assessable area and adverse to that of the public? The Court of Appeals made no finding of facts, nor of law, but, as it sustained the demurrer to the petition, presumably it held that the interest of Geiger was not, in the sense urged by plaintiff in error, adverse.
The problem is not without practical difficulty. Even where no bad faith exists, the suspicion of adverse interest may perhaps attach to votes cast by a landholder as a commissioner in the district affected, and this suspicion works a disadvantage to the public welfare. Following this theory, important courts of last resort do hold that an official who owns land which is to receive the benefit and bear the assessment burden of any proposed improvement is disqualified to cast a decisive vote in the assessment of benefits or in the proceedings providing for the improvement. Drainage Dist. v. Hutchins, supra; Drainage Dist. v. Smith, supra; Stahl v. Board of Supervisors, supra. If this rule be strictly applied, irrespective of whether the official acts in bad faith, for his own pecuniary benefit, or to the public detriment, it is plain that in many instances a community must wait during the entire term of a commissioner’s incumbency before' even starting to secure the improvement.
Part of the problem which has given the court some concern is the question of assessing benefits. *578 Manifestly, in the assessment of benefits secured from the improvement, the commissioner who owns land in the district comes nearer to “acting as a judge in his own case” than at any other stage in the proceedings. The instant case does not involve that question, for Geiger never voted on an assessment for benefits. Since the usual practice in assessing benefits is to make a level assessment, it is to be questioned whether even in that case, within the meaning of the rule, the official acts as a judge in his own cause, and we express no opinion upon that point. In voting a level assessment, he certainly would not be judging his own case separate from that of other taxpayers in his class. If he acts in bad faith in assessing benefits, obviously the vote would be void because of disqualification.
In this case, however, we repeat there is nothing in the record to indicate bad faith. Geiger’s property in its due proportion will bear 50 per cent, of the tax and the township in which he resides will bear 40 per cent, of the tax.
The fact that the public convenience would be greatly hampered if a commissioner who owns land in the district affected, but acts in complete good faith, should be disqualified to vote upon any phase of a road proceeding, has been held by many courts to be the deciding factor in the question. The majority of tribunals of last resort agree that the mere fact of ownership of property directly affected by the proposed improvement does not create such a disqualification in its members as to render the action of an assessing body void. Thus it is held that the “Legislature of a state, unless hampered by some constitutional provision, may create a tribunal *579 in a city or town, such as the council, to make an assessment, and such assessment will not be void even if every member of the board were a taxpayer in the district, nor is due process of law denied a property owner because two members of such board are abutting owners.” Hamilton’s Law of Special Assessments, Section 138.
Drainage commissioners also are not disqualified by the mere fact of their ownership of lands lying in the drainage districts. 19 Corpus Juris, p. 626, note 19, and cases cited. It is stated in 2 A. L. R., at page 1207, that it is the general rule that the interest which one or all of the members of a body charged with the making or rectifying of assessments for a public improvement may have, arising from the fact of their ownership of property directly affected by the proposed improvement, does not disqualify them. Lent v. Tillson (1891), 140 U. S., 316, p. 333, 11 Sup. Ct., 825, 35 L. Ed., 419; affirming Lent v. Tillson, 72 Cal., 404, 14 Pac., 71. In this case the mayor of San Francisco owned land abutting on the street, which, as one of the board of street commissioners, he voted to improve. Less Land Co. v. Fender (1915), 119 Ark., 20, 173 S. W., 407; Oates v. Cypress Creek Drainage Dist. (1918), 135 Ark., 149, 205 S. W., 293; People, ex rel. Chapman, v. Sacramento Drainage Dist. (1909), 155 Cal., 373, 103 Pac., 207; Nemaha Valley Dramage Dist. No. 2 v. Marconnit (1912), 90 Neb., 514, 134 N. W., 177; Drainage Dist. No. 1 of Pawnee Co. v. Chicago, B. & Q. Rd. Co. (1914), 96 Neb., 1, 146 N. W., 1055; State of North Dakota, ex rel. Dorgan, v. Fisk, Judge (1906), 15 N. D., 219, 107 N. W., 191; In re Cranberry Creek Drainage Dist. (1906), 128 Wis., *580 98, 107 N. W., 25. In the last-named case the second paragraph of the syllabus reads:
“Where commissioners or.boards act in a ministerial, administrative, or quasi judicial capacity, pecuniary interest (such as, in this case, the ownership of land in a proposed drainage district) does not disqualify them unless expressly so provided by statute.”
In the case of State of North Dakota, ex rel. Dorgan, v. Fisk, supra, the Supreme Court of North Dakota held that a board of drainage commissioners is exercising judicial functions when it assesses benefits to lands in the drainage district established by it, but also held that the fact that one of the members of the board of drainage commissioners owns land in the drainage district that will be benefited by the drain will not disqualify such member from acting. The court says in that ease (15 N. D., upon page 227, 107 N. W., 193):
“One of the drainage commissioners owned land within the drainage district that would be benefited by the drain. The owner, it is alleged, took an active interest in bringing about the establishment of the drain. This is claimed as a reason for invalidating the proceedings of the board entirely, under the principle that ‘no man can be a judge on his own case.’ No specific facts are shown that the commissioner did or said anything indicating that he prejudiced the case owing to the fact that his own land would be benefited. * * * If such a state of facts constitutes such interest in the result as will avoid the proceedings, the enforcement of the drainage law will necessarily be delayed or perhaps entirely thwarted.”
*581 The fact that one of the connnissioners owns property 100 or 150 feet beyond the area of benefit has also been held not to constitute a ground of disqualification which will invalidate a street assessment under a statute requiring such assessment to be made by disinterested freeholders, although the duty of the commissioners was' to determine how far the benefit extended and whether such property was to be included. State, Coward et al., Prosecutors, v. Mayor of North Plainfield, 63 N. J. L., 61, 42 Atl., 805. The court says in the opinion in this case (at page 62 of 63 N. J. Law, at page 805 of 42 Atl.):
“The next ground upon which the assessment is sought to be set aside is that one of the commissioners, Justus H. Cooley, was not á disinterested person and therefore was not qualified to act as such commissioner. The evidence taken in the case shows that this commissioner, at the time of his appointment, was the owner of two lots located about 100 or 150 feet beyond the area of benefit as fixed by the commissioners, and the argument is that, as one of the duties of the commissioners was to determine how far the benefit of this improvement extended, and consequently to determine whether or not Cooley’s lots were benefited, the necessity of his passing upon the question disqualified him. We do not think there is any merit in this ground of attack. The statute under which these proceedings have been had requires that the commissioners shall all of them be resident freeholders of the borough; that being so, they are necessarily required to determine whether or not the area of benefit includes the lands which they own, no matter in what part of the borough they may be located; and unless it *582 clearly appears that their determination is not justified by the facts their conclusion on this point should not be interfered with. Jelliff v. Newark, 19 Vroom, 101. An examination of the testimony justifies the conclusion that Mr. Cooley was a disinterested freeholder within the meaning of the act.”
Does not the same situation exist in the instant case as in the North Plainfield action? In this case Geiger, being a commissioner, is required to reside in the county. That being so, he is necessarily required to determine whether or not the area of benefit includes the land which he owns in the county where he resides. No matter in what part of the county it might be located, Geiger might be called upon to determine that his land should not be taxed; that is to say, that no road should pass through nor adjacent to his land. However, he has determined that the road shall pass through a district adjacent to his land, and that his land shall be taxed equally with that of every landowner in the assessable area; that it shall bear a heavy burden. If he had voted not to establish the road through that area, or not to assess his own land, would it not be possible to accuse him of having cast his vote in the negative because of financial interest? In other words, what action can a landowner in a county take as a commissioner relative to establishing improvements which will not to some extent affect his own property and his own financial interest, whether he votes in the negative or affirmative? If carried to its logical conclusion upon this point, the argument for disqualification would disqualify every commissioner in the county from voting upon any improvement whatever, and movements for improv *583 ing public communication, health and welfare might be at a standstill throughout the state.
There being in the record no evidence, nor claim, to the effect that Q-eiger was prejudiced in the road proceedings because of his ownership of land lying within the district affected by the road proceedings, nor any indication of bad faith upon his part, we hold that he was not disqualified from voting in the proceedings of September 13, 1922, and of October 11, 1922, and affirm the judgment of the Court of Appeals.

Judgment affirmed.

Marshall, 0. J., Wanamaker, Jones, Matthias and Day, JJ., concur.