BUFFALO COUNTY, APPELLEE, v. KEARNEY COUNTY, APPELLANT.

FILED FEBRUARY 20, 1909. No. 15,551.

1. Counties: BRIDGE REPAIRS. "A county which refuses to enter into a contract with an adjoining county to repair a bridge across a stream dividing the counties is liable to the county making the repairs under contract for 'such proportion of the cost of making said repairs as it ought to pay, not exceeding one-half of the full amount so expended,' when the county making the repairs has followed the procedure pointed out by the statute as to notice," etc. *Dodge County v. Saunders County*, 77 Neb. 787.

2. ———: ———: ISSUES. "Where the proper steps have been taken to render an adjoining county liable for the repair of such a bridge, and where an issue is raised as to the necessity of the

repairs or as to the amount paid being more than the actual and reasonable cost thereof, then the amount that the defaulting county ought to pay is a question for the jury, but, if no such issue is tendered, the county in default is liable for one-half of the cost of repairs." *Dodge County v. Saunders County*, 77 Neb. 787.

APPEAL from the district court for Kearney county: ED L. ADAMS, JUDGE. *Affirmed.*

*C. P. Anderbery* and *Joel Hull*, for appellant.

*J. M. Easterling* and *H. M. Sinclair,* contra.

FAWCETT, J.

This is an action by plaintiff, Buffalo county, to recover from defendant, Kearney county, one-half of the cost for the rebuilding and repairing of 800 feet of the south end of a bridge over the Platte river immediately south of the city of Kearney, and at a point where said river is the dividing line between the two counties. The work was procured to be done by plaintiff under a contract with the Standard Bridge Company, and the cost has been paid by plaintiff. Prior to the taking of any steps in the making of the contract with the bridge company plaintiff duly served upon the board of supervisors of defendant a written notice, in which their attention was called to the necessity for doing such construction and repair work, and requesting the supervisors of defendant to cooperate with plaintiff in the proposed work. The board of supervisors of defendant on December 22, 1904, by motion entered of record, resolved to take no action relative to co-operating with plaintiff. Thereupon plaintiff served another notice upon defendant, stating that it had been duly determined to enter into a contract for the material, construction and completion of 800 feet of bridge, and that plaintiff had advertised for bids therefor, and proposed, if suitable bids were offered, to enter into a contract for such construction and repair work, and request-

ing defendant to join in said contract. The supervisors of defendant county thereupon, by motion duly entered of record, refused to enter into any such contract with Buffalo county. Buffalo county then proceeded to advertise for bids, and, after the contract with the bridge company had been prepared, forwarded the same to defendant with a request that it join in the execution thereof. Thereupon the supervisors of defendant county, by resolution entered of record, refused to enter into any such contract. Buffalo county then proceeded with the contract, had the work done thereunder, and paid for the same, the total cost of the work aggregating $5,732.42, and filed with the county board of defendant county a claim, duly verified, setting out the items of its expenditures, and requesting defendant county to pay one-half thereof, viz., $2,866.21. The claim was rejected, whereupon plaintiff appealed to the district court for Kearney county, notice of which appeal was duly served upon defendant. When the bridge company entered upon the work of reconstructing the bridge, it was found necessary to reconstruct 858 instead of 800 feet, as stated in the notice served upon defendant. It was also deemed advisable to expend other sums of money for extras and to construct a number of ice breaks; but on the trial of the case plaintiff abandoned its claim to compensation for the extra 58 feet of bridge construction or for any of the other extras referred to, and demanded a judgment simply for one-half of the construction of 800 feet of the bridge, which under defendant's contract with the bridge company amounted to $1,956. For answer the defendant admitted that the plaintiff and defendant is each a body politic and corporate by the name and style, respectively, of the county of Buffalo and the county of Kearney, and denied each and every other allegation in plaintiff's petition, and then set up several other alleged defenses which we do not deem it necessary to set out at length.

The first of these defenses is based upon *State v. Kearney County*, 12 Neb. 6. Another in effect is that the resi-

dents of Buffalo county are far more interested in, and will be more greatly benefited by, the bridge than the residents of Kearney county; that the county seat of plaintiff county will be greatly benefited by increased trade which it will receive from the citizens of defendant county; and that Kearney county is interested to a small degree only in the use of such bridge. Another is to the effect that in landing such bridge on the south edge or bank in defendant county the same was landed on ground owned by private parties (the evidence, however, shows that each end of the bridge connects with a public road); that the bridge was built and accepted by plaintiff for the exclusive benefit of itself and the city of Kearney; that said bridge was built prior to the enactment of sections 6085-6088, Ann. St. 1903, which sections originally became laws and in force June, 1879, being more than five years after the completion of said bridge; and, lastly, that by virtue of an act " 'To locate a state road from Kearney Junction, Buffalo county, to Bloomington, Franklin county, and thence to intersect a state road at the Kansas line, at the southwest corner of the southeast $\frac{1}{4}$ of section 34, town 1, range 16 west,' approved February 19, 1875 (laws 1875, pp. 301-303), the said bridge became the exclusive charge of Buffalo and Franklin counties, Nebraska, and as such was accepted by said counties, and any attempted repeal therefrom is contrary to section 1, art. XVI, entitled 'Schedule,' of the constitution of the state of Nebraska, and also contrary to section 15, art. III of the constitution of Nebraska, and also contrary to section 3, art. I of the constitution of Nebraska, and also contrary to the constitution of the United States, in that it deprives the defendant of its property without due process of law." The reply was a general denial of all allegations in the answer, "except the express admissions therein contained."

Before the trial was entered upon certain taxpayers of Kearney county appeared as interveners, and were permitted to file separate answers, which we do not deem it

necessary to set out or refer to in this opinion further
than to say that their intervention was entirely unneces-
sary. We think the argument of counsel for plaintiff is
sound that these interveners "have no rights in this con-
troversy and no standing in court. It is a universal rule
of law that no one has any right to intervene in any action
unless he has some right to protect, which is not being
protected." Kearney county through its legally consti-
tuted authorities was vigorously and ably doing every-
thing that could be done to protect any rights which the
defendant might have, and we see no reason why these
taxpayers should have incumbered the record by inter-
vention.

On the trial of the case plaintiff introduced the docu-
mentary evidence showing the various notices to and de-
mands upon defendant to join in the construction and
repair work and in the execution of the contract therefor,
and the several refusals of the defendant above set out.
It also furnished full and complete proof of its compli-
ance with the law in regard to advertising for bids, its
acceptance of the lowest bid, and entering into the con-
tract, the doing of the work and the payment therefor.
When both sides had rested, the court directed a verdict
in favor of the plaintiff for one-half of the cost of recon-
structing and repairing the 800 feet of the bridge referred
to in the sum of $1,956, and upon a verdict rendered in
accordance with such instruction rendered judgment,
from which this appeal is prosecuted. In its brief
defendant sets out sections 87-89, ch. 78, Comp. St. 1907,
and then vigorously assails the amendment of 1899 of sec-
tion 88 as unconstitutional and void. The decisions of
this court in *Cass County v. Sarpy County,* 63 Neb. 813,
and on rehearing in 66 Neb. 476, and again on rehearing
in 72 Neb. 93, are also vigorously assailed. This court
in the three decisions referred to and in *Iske v. State,* 72
Neb. 278, *Saline County v. Gage County,* 66 Neb. 844, and
*Dodge County v. Saunders County,* 77 Neb. 787, has so
thoroughly considered and decided all of the questions in-

sisted upon in defendant's brief that we must decline to again consider them. We have carefully reexamined all of those cases, and are entirely satisfied with the conclusions therein reached. The district court very properly followed the rule announced in those cases. The fact that the bridge in question was originally built prior to the enactment of the sections of statute pleaded by defendant and under which plaintiff is seeking to enforce contribution is immaterial, as such matters are at all times subject to regulation by the legislature.

The judgment of the district court is

AFFIRMED.