THE NEBRASKA MID-STATE RECLAMATION DISTRICT, A CORPORATION, ET AL., APPELLEES, V. HALL COUNTY ET AL., APPELLANTS.

41 N. W. 2d 397

Filed February 24, 1950. No. 32702.

*Sampson & Armatys*, and *Van Pelt, Marti & O'Gara*, for appellant Warren Marsh.

*Robert L. Haines, R. Stanley Torpin*, and *Donald H. Weaver*, for appellants Buffalo, Merrick, and Hall Counties.

*Pierson & Scheele*, for appellant Leo Wyman.

*James H. Anderson*, Attorney General, *Walter E. Nolte*, and *William T. Gleeson*, for appellee State of Nebraska.

*Neighbors & Danielson, John P. Jensen*, and *Harry Grimminger*, for other appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and KOKJER, District Judge.

CHAPPELL, J.

This action was brought by The Nebraska Mid-State Reclamation District, hereinafter generally designated as the district, and its directors, under the provisions of the Uniform Declaratory Judgments Act, particularly section 25-21,149, R. S. Supp., 1949, and section 25-21,150, R. R. S. 1943, and under the provisions of the Reclamation Act, particularly sections 46-568 to 46-570, R. S. Supp., 1949.

The purpose of the action was to obtain an adjudication that the Reclamation Act, hereinafter generally designated as the act, Chapter 173, Laws of Nebraska, 1947, p. 523, now Chapter 46, article 5, R. S. Supp., 1949, was constitutional and valid, obtain judicial confirmation of the legality and finality of organization of the district, and the validity of specified subsequent acts of the district and its directors, and also to have judicially determined the rights, status, duties, and other legal relations of the district, its officers and directors, the officers of defendant counties, and others under the act.

Defendants were Hall, Merrick, and Buffalo counties, and their respectively named county supervisors, treasurers, and county attorneys, the Attorney General, and State Engineer, together with Henry H. Falldorf, Warren Marsh, Harvey E. Glatfelter, and Leo Wyman, who each owned irrigable and non-irrigable rural farm lands, urban real estate, and tangible personal property within the boundaries of plaintiff district, respectively in Hall, Merrick, and Buffalo counties, and "all persons having or claiming any interest in and to the organization and operation of the Nebraska Mid-State Reclamation District."

Notice of the action was concededly published and posted as required by section 46-568, and process as well

was duly served upon all named defendants. Defendant counties and their respective officers, the Attorney General, the State Engineer, Warren Marsh, and Leo Wyman, first demurred generally, or generally and for defect of parties defendant. However, their demurrers were overruled, whereupon such defendants filed answers preserving their demurrers, which answers were respectively traversed by plaintiff. All other defendants defaulted.

In that connection, defendant Hall County and its officers answered, substantially admitting that the district was legally organized and that the subsequent acts alleged by plaintiff were taken as alleged, and that same were legal and valid if the act had constitutional validity, which they denied. Such defendants also admitted that part of the tax moneys levied for the benefit of the district was being withheld by the county treasurer of Hall County pending judicial determination of constitutionality of the act. Defendants Merrick and Buffalo counties and their respective officers denied generally. Defendants Warren Marsh and Leo Wyman denied generally and also affirmatively alleged that the Reclamation Act was unconstitutional in several particulars. The Attorney General and State Engineer answered, affirmatively alleging that the act was constitutional and admitting that the district had been legally organized, but, for lack of information, denied generally the other allegations of plaintiffs' petition.

After a hearing whereat evidence was adduced, the trial court found generally for plaintiffs and against defendants and all other parties having or claiming any interest in and to the organization and operation of the district. Its decree particularly found that the court had jurisdiction of the subject matter and persons of the named defendants, all owners of property in the district, and all parties having any interest in the district; that a justiciable controversy existed between the parties; that the district had been legally and finally organized and established as a public corporation and political

subdivision of the state under the provisions of the act; that the taxes levied or caused to be levied by the district were legally and lawfully levied within the specific limits prescribed by the act; that the taxes levied against the property of defendants Warren Marsh and Leo Wyman were valid and that it was their duty to pay such taxes, and that it was the duty of all other taxpayers in said district on whose property taxes were similarly levied, to pay the same as provided by the act; and that it was the duty of the county officers to levy and collect such taxes. It specifically found and adjudged that the Reclamation Act was not unconstitutional, as claimed by defendants.

Motions of defendants for new trial were overruled, and they appealed, assigning substantially that the trial court erred in overruling their demurrers, and that the judgment was not sustained by the evidence but was contrary thereto, and contrary to law. We conclude that the assignments should not be sustained.

The evidence is not in conflict. In the light thereof, and admissions in the pleadings, it cannot be disputed that the district was legally and finally organized and established, from which no appeal was taken, and that the subsequent acts of the district and its officers and directors conformed with the provisions of the Reclamation Act, all of which were valid and binding, if the act was constitutional. The rights and duties of district officers, as well as those of defendant counties and others, are clearly defined in the act, but, of course, such rights and duties are thus created and imposed only if the act is constitutional.

Admittedly, the county treasurer of Hall County is withholding a part of the tax money levied and collected for the benefit of plaintiff district, pending decision of this case, and will continue to do so until a court order requires him to do otherwise. Also, without dispute, the county treasurer of Merrick County had difficulty with some taxpayers who protested the payment of taxes

levied for plaintiff district, whereupon he informed the taxpayers of that county by public notice that if they would pay the taxes he would not pay any of such money to the district until validity of the district, its conduct, and constitutionality of the act, had been determined. He has not turned any of such moneys over to the district, and does not intend to do so until this case is decided, or a court order requires him to do so. He, as well as the county treasurers of Hall and Buffalo counties, received notices from the Union Pacific Railroad Company, demanding that taxes paid by it for district purposes be refunded, because the act was unconstitutional, and such taxes were illegal, unauthorized, and void.

Admittedly, the district includes both rural and urban real and personal tangible property located in parts of Buffalo, Hall, and Merrick counties, the value of which property aggregates millions of dollars. Admittedly, also, the district is populated by many thousands of persons.

Briefly summarized, the act provides as follows: Sections 46-501 and 46-502 declare the public policy, use, benefits, and purpose of the organization of reclamation districts to conserve and control water resources of the state for the prosperity and welfare of the people of the State of Nebraska.

Sections 46-503 to 46-514 contain definitions of terms.

Sections 46-515 to 46-529 provide generally for the organization and establishment of reclamation districts as political corporate quasi-municipal subdivisions of the state. They provide for the filing of a petition therefor, signed by the owners of not less than 30 percent of the acreage of lands to be included in the district, exclusive of land in cities and villages, in the office of the Department of Roads and Irrigation; for a bond to be furnished by petitioners; and for filing of protest petitions, signed by not fewer than the owners of 30 percent of the acreage of lands in the district, exclusive of lands in cities and

villages, which, when signed by the requisite number of owners, requires dismissal of the petition praying for creation of the district. They provide for publication of notice, the filing of objections by any owner of real property in the proposed district, who was not a petitioner, a hearing, and subsequent entry of orders creating a district or dismissing the petition therefor. They also provide for right of appeal by any owner of real property within the district from final orders of the department establishing the district, the determination of its boundaries, or the enclosure of any of such person's property within the district.

Sections 46-530 to 46-541 provide procedure first for appointment and thereafter for election of a board of directors by all qualified electors within the district, or the filling of vacancies thereon by the board under prescribed circumstances and classifications, and define the rights, general powers, and duties of the board of directors.

Sections 46-542 to 46-559 provide for fiscal management; give the board of directors the power and authority to levy and collect taxes and special assessments for designated purposes, create a sinking fund, and pay defined obligations and indebtedness of the district by any one or more of four specifically classified A, B, C, and D, methods or limited combinations thereof; and impose the duty upon appropriate city and county officers to levy and collect such taxes for the district, and prescribe the manner thereof. Section 46-557 exempts prescribed governmental properties from taxation.

Class A are general taxes, uniformly levied upon all tangible property within the district. It is limited to one mill prior to delivery of water from the works, and thereafter not to exceed two mills except in the event of accruing deficiencies or defaults, when an additional one-mill levy may be made as provided in section 46-553.

Section 46-543 specifically provides: "* * * no tax shall be levied and collected under Class A until the

proposition of levying taxes shall have been submitted by a resolution of the board to the qualified electors of the district at an election held for that purpose in the same manner as provided for submission of incurring bonded indebtedness in sections 46-564 to 46-566, and when the proposition has been approved by a majority of the qualified electors of the district voting on the proposition at such election, thereafter the board shall be entitled to certify to the county board the rate of tax to be levied."

Class B are assessments for special benefits accruing to property within petitioning municipalities for which water services may be contractually furnished by the district, as provided in sections 46-545 to 46-547.

Class C are assessments for special benefits accruing to lands within petitioning irrigation districts for which water services may be contractually furnished by the district as provided in sections 46-548 and 46-549.

Class D are assessments for special benefits accruing to lands for which water services may be contractually furnished by the district to petitioning individual owners of lands for irrigation purposes, as provided in sections 46-550 to 46-552.

Further, as provided by section 46-544, if certain lands within the district, not included within classes B, C, and D, receive special direct benefits from recharging of the ground water reservoirs by water orginating from district works, the board may in such year fix such a rate of levy upon such tangible property as will compensate the district for the special direct benefits thus accruing. However, "Such levy shall in no case exceed, together with all other levies made under Class A, on such land the sum of four mills on the dollar of the assessed valuation" thereof. However, "Such owner of lands specially assessed for special direct benefits shall have notice, hearing, the right of appeal and be governed by the provision of section 46-555 (46-554)."

Section 46-554 provides that prior to the first day of

July of each year in which assessments are made, the board shall appoint a time and place or places where it will meet within the district for the purpose of hearing objections to assessments, and give prior notice thereof by publication, whereat any person whose property is taxed or assessed may file written objections that his property "has been assessed too high, or has been erroneously or illegally assessed," and have a hearing, with right of appeal from the finding of the board, and provides the mode and manner of such an appeal.

Section 46-560 confers upon the board of directors certain defined powers concerning the management, control, delivery, use, and distribution of water by the district.

Section 46-561 provides a procedure by petition, notice, and hearing, for including lands within the district which were not included at the time of organization. Likewise, section 46-562 provides a procedure by petition, notice, and hearing for the exclusion of lands from the district which have been included, and gives the right of appeal from a denial thereof.

Sections 46-563 to 46-567 authorize the district, by resolution, to acquire, construct, or maintain sources of water supply, waterworks, or other improvements for the purposes of and as provided by the act, enter into contracts with reference thereto, and if the situation requires, issue bonds therefor after submission of that matter to and approval by a majority of the qualified electors of the district.

Sections 46-568 to 46-570 authorize a special proceeding by petition filed by the district in the district court for the judicial examination and determination of any power conferred by the act, and the legality of any tax or assessment levied, or of any act, proceeding or contract of the district, after appropriate notice by posting and publication, with hearing, decree, and right of appeal therefrom.

Section 46-571 provides that the act shall be liberally construed to secure and preserve the public health,

safety, convenience, and welfare, and for the security of public and private property, and section 46-572 contains an all-inclusive savings clause.

Section 46-573 provides that all works constructed or otherwise acquired or used and operated by any such district shall be works of internal improvement, and that all laws applicable to works of internal improvement as regards eminent domain and other defined purposes contemplated in the act, shall be applicable as nearly as may be to districts organized under the act and in performance of the duties thereby conferred or imposed upon them.

We are confronted at the outset with defendants' contention that the trial court erred in overruling their demurrers to plaintiffs' amended petition because it allegedly did not contain allegations of fact which properly raised any issue of constitutionality of the act, legality of formation of the district, or any issue upon which adjudication was sought, in that no existing actual controversy presenting justiciable issues was alleged, and that there was a defect of parties defendant.

Concededly, the provisions of the Uniform Declaratory Judgments Act are operative only when there is a present actual controversy where only justiciable issues are presented, and all interested persons are made parties to the proceedings. Concededly, also, a demurrer admits only facts that are well pleaded, and not conclusions of either law or fact.

Viewed in that light, we have examined plaintiffs' amended petition, which, insofar as important here, discloses affirmative allegations that the directors of the district, and officers of defendant counties, were uncertain as to their rights, powers, and duties under the act. It contains specific allegations that the defendants and others who own property within the district claimed that the act was unconstitutional and void for specifically alleged reasons, and that the district was not legally organized. It was alleged that defendant county officers

would not collect taxes levied or perform the other duties required of them by the act until their rights, duties, and powers thereunder had been judicially determined.

Section 25-21,149, R. S. Supp., 1949, gives courts of record within their respective jurisdictions power to declare rights, status, and other legal relations whether or not further relief is or could be claimed, which declarations may be either affirmative or negative in form or effect, and have the force and effect of a final judgment.

Section 25-21,150, R. R. S. 1943, provides that any person whose rights, status, or other legal relations are affected by a statute, may have determined any question of construction or validity arising under the statute, and obtain a declaration of rights, status, or other legal relations thereunder.

In State ex rel. State Railway Commission v. Ramsey, 151 Neb. 333, 37 N. W. 2d 502, this court, citing Thorin v. Burke, 146 Neb. 94, 18 N. W. 2d 664, held that: "Proceedings for a declaratory judgment extend to the validity of a statute where there is a justiciable, determinable controversy between parties in respect to rights thereunder."

Plaintiffs' amended petition alleged, and it is admitted, that there were many thousands of residents and property owners within the district. It is apparent that it would be impracticable, if not impossible, to make all of the property owners defendants and serve them personally with process in the case at bar. It was not necessary to do so.

Section 25-319, R. R. S. 1943, provides that: "When the question is one of a common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." The case at bar comes squarely within such statute. The three counties, their respective officers, and the four individual representative property owners personally served with process, together with "all persons having or

claiming any interest in and to the organization and operation of the Nebraska Mid-State Reclamation District," as in any other class action, were made parties defendant. Not only the counties but also their officers and two of the property owners appeared, and by their pleadings, evidence, and briefs, opposed the relief prayed by plaintiffs, upon grounds which, if meritorious, protected all other persons and property owners in the district.

Further, public rights were involved, and public officers on both sides of the case at bar were engaged in litigation to protect such rights. By analogy, from Buffalo County v. Kearney County, 83 Neb. 550, 120 N. W. 171, State ex rel. Randall v. Hall, 125 Neb. 236, 249 N. W. 756, and Smithberger v. Banning, 130 Neb. 354, 265 N. W. 10, the applicable rule is that when public officers are engaged in litigation to protect public rights, and their pleadings and procedure maintain public interest, private persons are not necessary parties because they do not have any such rights to protect which are not being protected.

It will be noticed, also, that plaintiffs pleaded facts which would entitle them to relief under sections 46-568 to 46-570. Contrary to defendants' contentions, such statute did not amend or repeal any provision of the Uniform Declaratory Judgments Act in violation of Article III, section 14, Constitution of Nebraska. Its provisions are simply part of a general act complete within itself, which authorizes reclamation districts to prosecute a special confirmatory proceeding in the nature of an action in rem in the district court, there to be construed in the light of our holdings under the Uniform Declaratory Judgments Act, which does not exclude the awarding of further relief which is or could be claimed.

Such a confirmatory action is not new in this jurisdiction. Provision therefor was made in the irrigation law of 1895, which still remains a part thereof, as sections 46-1,102 to 46-1,106, R. S. 1943. Board of Directors of Alfalfa Irrigation District v. Collins, 46 Neb. 411, 64 N.

W. 1086, was an appeal from such a decree of confirmation, contested by taxpayers within the district, upon the grounds that the district irrigation law was unconstitutional, that the bonds of the district, involved therein, were invalid, and that the district was not legally organized. Therein this court affirmed the trial court's decree awarding the plaintiff irrigation district the relief prayed. The opinion discussed at length the questions raised by the parties, and affirmed constitutionality of the act, citing applicable cases from California, whose irrigation statute, identical in all material respects, was enacted prior to our own.

In Wyman v. Searle, 88 Neb. 26, 128 N. W. 801, it was held that such a confirmation proceeding was a special proceeding in rem, and that if such an act was authoritatively prosecuted and the trial court acquired jurisdiction of the subject matter, its decree could not thereafter be assailed in a collateral proceeding, citing Board of Directors of Alfalfa Irrigation District v. Collins, *supra.*

Again, Kinnan v. France, 113 Neb. 99, 202 N. W. 452, was an appeal from such a confirmation proceeding, instituted by an irrigation district, wherein the trial court found for the objectors and refused confirmation, primarily upon the ground that petitioners had failed to present a feasible plan of irrigation, and this court affirmed the judgment.

In Crall v. Board of Directors of Poso Irrigation District, 87 Cal. 140, 26 P. 797, it was said: "The confirmation proceeding is denominated in the act a special proceeding, and it is clearly in the nature of a proceeding in rem, the object being to determine the status of the district and its power to issue valid bonds. * * * It was not necessary, we think, that personal service be made upon all or any of the land-owners of the district, in order to give the court jurisdiction and power to render a judgment valid and binding as against them and all the world upon all the questions involved in the case."

In Progressive Irrigation District v. Anderson, 19 Idaho

504, 114 P. 16, it was held: "The provisions of the statute concerning the confirmation of all proceedings in the organization of such districts were enacted for the object and purpose of binding the state as well as all others in regard to all of the proceedings for the organization of such districts,, their boundaries and the land included therein, and to set at rest at an early date the legal existence of the district." See, also, American Falls Reservoir District v. Thrall, 39 Idaho 105, 228 P. 236; and Medford Irrigation District v. Hill, 96 Or. 649, 190 P. 957.

In Hanson v. Kittitas Reclamation District, 75 Wash. 297, 134 P. 1083, it was said: "The confirmatory proceeding under the present statute is clearly a proceeding in rem, the object being to determine and fix the status of the district, and its power to issue valid bonds. The Legislature unquestionably has power to pass an act to accomplish the purposes intended, and any form of service which would give reasonable notice of the proceeding is sufficient."

We conclude that plaintiffs' petition stated a cause of action, not only under the Uniform Declaratory Judgments Act, but also under sections 46-568 to 46-570 of the Reclamation Act, and that defendants' demurrers thereto were properly overruled.

In Board of Directors of Alfalfa Irrigation District v. Collins, *supra*, it was held: "While it is within the province of the judiciary to declare invalid acts evidently not designed to subserve public interest, if the subject-matter of legislation be such that there is any doubt of its character, or if by any reasonable construction it can be held to be for the welfare of the public, the will of the legislature should prevail over any mere doubt of the court."

As said in State v. Poynter, 59 Neb. 417, 81 N. W. 431: "Before entering upon a discussion of the constitutional question to which we have alluded, it is important that there ever be kept in view that the judiciary will not declare an act of the legislature unconstitutional, unless

it is clear that such act is inhibited by the fundamental law. If a reasonable doubt exists, it must be solved in favor of the validity of the statute. See Turner v. Althaus, 6 Nebr. 55; State v. Lancaster County, 4 Nebr., 537; Pleuler v. State, 11 Nebr., 547; Board of Directors Alfalfa Irrigation District v. Collins, 46 Nebr., 411; Davis v. State, 51 Nebr., 302." See, also, Weekes v. Rumbaugh, 144 Neb. 103, 12 N. W. 2d 636, 150 A. L. R. 129; Sommerville v. Johnson, 149 Neb. 167, 30 N. W. 2d 577; Lincoln Federal Labor Union v. Northwestern Iron and Metal Co., 149 Neb. 507, 31 N. W. 2d 477, affirmed in 335 U. S. 525, 69 S. Ct. 251, 93 L. Ed. 201; Dorrance v. County of Douglas, 149 Neb. 685, 32 N. W. 2d 202.

In the light of the foregoing principles, we will consider the constitutional questions involved. In doing so, we are mindful that Colorado adopted a water conservancy act in 1937, and that Utah adopted a water conservancy act patterned thereafter in 1941. The Nebraska Reclamation Act, adopted in 1947, was borrowed from and is substantially the same as the Colorado act, with one exception hereinafter discussed. Prior thereto, the Supreme Court of Colorado, in People ex rel. Rogers v. Letford, 102 Colo. 284, 79 P. 2d 274, construed and sustained the constitutionality of the Colorado water conservancy act, wherein it was subjected to almost every conceivable test, paralleling those in the case at bar. Likewise, in Patterick v. Carbon Water Conservancy District, 106 Utah 55, 145 P. 2d 503, the Utah Supreme Court sustained the constitutionality of the water conservancy act of that state, with one exception unimportant here, for want of constitutional similarity. See, also, Lehi City v. Meiling, 87 Utah 237, 48 P. 2d 530; People ex rel. Setters v. Lee, 72 Colo. 598, 213 P. 583; Miami County v. Dayton, 92 Ohio St. 215, 110 N. E. 726; Beck v. Missouri Valley Drainage District, 46 F. 2d 632, 84 A. L. R. 1089, certiorari denied in 284 U. S. 618, 52 S. Ct. 7, 76 L. Ed. 527.

Defendants argued that the act contravened that part

of Article III, section 14, Constitution of Nebraska, which provides: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title." We conclude that the contention has no merit.

The title reads: "AN ACT to provide for reclamation districts; to provide for their organization; to set forth the purposes, procedure and powers thereof; to define terms; to provide the duties of certain officers, boards and departments; to provide a construction clause; and to declare an emergency."

In Spier v. Thomas, 131 Neb. 579, 269 N. W. 61, this court said: "The purpose of the constitutional provision limiting a legislative enactment to the object expressed in the title is to challenge the attention of those affected by the provisions of the act and to prevent surreptitious legislation. However, the rule in this state for a long time has been: 'The provisions of * * * the Constitution should be liberally construed so as to uphold a provision in a legislative act which, though not specifically expressed in the title, is germane to the subject-matter, and comprehended within the objects and purposes, of the act.' Pandolfo v. State, 120 Neb. 616, 234 N. W. 483. It is not necessary for the title to analyze the bill in detail. In State v. Price, 127 Neb. 132, 254 N. W. 889, it is said: 'If by a fair and reasonable construction the title calls attention to the subject-matter of the bill, it may be said that the object is expressed in the title.' In an earlier case, Nebraska Loan & Building Ass'n v. Perkins, 61 Neb. 254, 85 N. W. 67, it was stated: 'It is not essential that the title chosen by the legislature be the most appropriate; if it indicates the scope and purpose of the act, it is sufficient. * * * Neither is it necessary that the title inform its readers of the specific contents of the bill. If it indicates the subject of the proposed legislation, it meets all essential requirements. It needs not that it be a complete abstract and epitome of the contents of the bill.' * * * An examination of the cases discloses that a title is sufficient to uphold a provision, though not specif-

ically expressed, if it is germane to the subject-matter and within the purposes of the act." See, also, City of Mitchell v. Western Public Service Co., 124 Neb. 248, 246 N. W. 484.

In Rein v. Johnson, 149 Neb. 67, 30 N. W. 2d 548, 335 U. S. 814, 69 S. Ct. 31, 93 L. Ed. 19, it was said: "This court has held that: 'If an act has but one general object, no matter how broad that object may be, and contains no matter not germane thereto, and the title fairly expresses the subject of the bill, it does not violate section 14, art. III of the Constitution, providing that no bill shall contain more than one subject and the same shall be clearly expressed in the title.' Beisner v. Cochran, 138 Neb. 445, 293 N. W. 289.

"That provision does not require that the title to an act should be a synopsis of a law. Its purpose was to prevent surreptitious legislation by advising legislators of the nature of the measures they are called upon to support or oppose. If, by a fair and reasonable construction, the title calls their attention to the subject matter of the proposed act, it may be said that the object is clearly expressed in the title. Lennox v. Housing Authority of the City of Omaha, 137 Neb. 582, 290 N. W. 451.

"The above rule was reaffirmed and applied in Maher v. State, 144 Neb. 463, 13 N. W. 2d 641. Therein, this court also reiterated an applicable rule stated in Pandolfo v. State, 120 Neb. 616, 234 N. W. 483, to the effect that: 'The provisions of the Constitution relating to titles are to be "liberally construed, and so construed as to admit of the insertion in a legislative act of all provisions which, though not specifically expressed in the titles, are comprehended within the objects and purposes of the act as expressed in its title; and to admit all provisions which are germane, and not foreign, to the provisions of the act as expressed in its title." ' "

The title here involved gave notice that the purpose and object of the act were to provide for reclamation

districts and their organization, indicating that organization of such districts was to be authorized by the act, and that procedure was provided for such organization. It gave notice that the act set forth the purposes of such districts, the procedure to be followed by them, and the power given to them in order to accomplish the purposes enumerated in the act. It indicated that terms used were to be defined in the act; that the act provided the duties of all officers, boards, and departments as recited therein; and that the act included a construction clause and declared an emergency.

In the light of the foregoing, we conclude that the act contains but one subject, clearly expressed in its title, in conformity with the authorities heretofore cited, and did not contravene Article III, section 14, Constitution of Nebraska.

Defendants also argued that the act contravened Article II, section 1, Constitution of Nebraska, because it conferred judicial powers on the Department of Roads and Irrigation, an executive and administrative body as provided by section 81-101, R. S. 1943, when, as provided in Article V, section 1, Constitution of Nebraska, only a court may exercise such powers. We conclude that the contention has no merit.

In that connection, concededly the Nebraska Legislature borrowed almost bodily the Colorado conservancy act, after which the Utah water conservancy act was generally patterned. Under those acts, proceedings for the creation of reclamation districts were had before district courts, and such procedure was held to be constitutional in People ex rel. Rogers v. Letford, *supra,* and Patterick v. Carbon Water Conservancy District, *supra.* In the first case it was concluded that the act did not delegate legislative or administrative powers to the district court within the meaning of the constitutional prohibition thereof, upon the generalization that judicial powers were vested by the statute in the court organizing the district, and the administrative powers complained of

were incidental to the judicial functions thus vested, citing People ex rel. Setters v. Lee, *supra,* and State ex rel. Chicago, M. & St. P. Ry. Co. v. Public Service Commission, 94 Wash. 274, 162 P. 523. In Patterick v. Carbon Water Conservancy District, *supra,* the court simply held that under the statute such proceedings were judicial in character, in connection with its holding that the act did not violate due process of law, quoting from Miami County v. Dayton, *supra.* It will be observed, however, that Ohio cases are not controlling here, since as stated in State ex rel. Thompson v. Neble, 82 Neb. 267, 117 N. W. 723, 19 L. R. A. N. S. 578: "The constitution of the state of Ohio contains no provision similar to that contained in the constitution of this state, dividing the powers of government into three distinct departments, and prohibiting persons of one of the departments from exercising the powers properly belonging to either of the others."

It is conceded, also, as an elementary proposition, that when a statute has been adopted from another state,, ordinarily the construction given prior to its adoption by the courts of that state will be followed in the adopting state, in the absence of any indication of a contrary intention on the part of the Legislature. The rule is subject to the qualification, however, that a construction of such a statute by the state from which it was adopted is entitled to no greater consideration than previous decisions of this court, and will be rejected for reasons which would require the overruling thereof had it been first adopted in this state. Morgan v. State, 51 Neb. 672, 71 N. W. 788; Goble v. Simeral, 67 Neb. 276, 93 N. W. 235.

It will be observed, however, that this state did not adopt the provision for creation of the district appearing in the Colorado act, and for good reason, as will be hereinafter observed.

In a number of cases this court has held that the Department of Roads and Irrigation or its equivalent is an administrative body, possessing incidental quasi-judicial

powers not within the prohibition of Article II, section 1, or Article V, section 1, of the Constitution of Nebraska. Crawford Co. v. Hathaway, 67 Neb. 325, 93 N. W. 781, 108 Am. S. R. 647, 60 L. R. A. 889; Enterprise Irrigation District v. Tri-State Land Co., 92 Neb. 121, 138 N. W. 171; Dawson County Irrigation Co. v. McMullen, 120 Neb. 245, 231 N. W. 840; State ex rel. Wright v. Lancaster County Rural Public Power District, 130 Neb. 677, 266 N. W. 591.

As stated in Crawford Co. v. Hathaway, *supra*: "Such functions, it would seem, are clearly administrative in character, and not judicial. It is a judicial function to administer justice between litigants in cases where disputes arise and to settle these disputes according to law as administered in courts of justice. The board of irrigation, however, in many cases acts in advance of any dispute, and whether there is or will be a controversy in no way affects its powers. The courts can act only as controversies arise between litigants, and then only by determining the questions presented by the litigation. While there are some questions affecting property rights which grow out of the administration of the law by the state board of irrigation, and in which are involved matters in dispute calling for action of a quasi-judicial character, yet as to all these ample provisions are made for recourse to the courts. Powers of the same general nature and character are conferred upon almost every administrative body known to the statute, and regarding which it has frequently been decided are of a quasi-judicial nature, and yet such bodies are invariably held to be administrative, and to in no way conflict with the constitutional provisions regarding officers and bodies upon which judicial power may be conferred."

As stated in Mitchell v. County of Clay, 69 Neb. 779, 96 N. W. 673, affirmed on rehearing at page 795, and approved in Shumway v. Warrick, 108 Neb. 652, 189 N. W. 301: "When the law commits to any officer the duty of looking into facts and acting upon them, not in a way

which it specifically directs, but after a discretion in its nature judicial, the function is quasi judicial. State v. Hastings, 37 Neb. 96, 117."

While we could well conclude upon the basis of such generalizations that defendants' contention has no merit, we are not required to do so, since Searle v. Yensen, 118 Neb. 835, 226 N. W. 464, 69 A. L. R. 257, squarely meets the issue, disposes of defendants' contention, and was doubtless the reason why the Legislature placed proceedings for creation of the district in the Department of Roads and Irrigation. That case involved a general act, complete in itself, purporting to authorize the organization of power districts by petition filed in the district court, whereat, upon notice and hearing, the court was authorized and required, as in the case at bar, to determine whether or not the district should be incorporated, whether or not the boundaries were reasonable and proper for the public convenience and welfare, and fix the boundaries with the end in view of promoting the interests and purposes of such district. In that opinion it was said: "The legislature has provided that certain steps shall be taken and the entire matter submitted to the district court, which is then required to determine whether the proper steps have been taken and the facts necessary to be shown before a corporation may be formed; but, in addition, assuming all matters required by the law exist, the court is still authorized and required to determine (1) 'whether or not the district should be incorporated,' (2) whether the 'boundaries are reasonable and proper for the public convenience and welfare,' and (3) 'to fix the boundary lines of such district with the end in view of promoting the interest' of such district. These questions are of purely legislative cognizance, and must be determined by the legislature or some body having legislative or administrative powers to which their determination is delegated. * * * As the statute now stands, the court is required to determine what facts shall exist as a basis for the organization of the district,

a purely legislative function and must be held invalid as an attempt to impose upon the courts the performance of nonjudicial duties, and an unauthorized delegation of legislative power."

In that case, authorities from this and other jurisdictions, too numerous to cite herein, were either followed or distinguished, as the basis for finally holding: "Under section 1, art. II, of the Constitution of this state, dividing the powers of government into three departments, legislative, executive and judicial, and prohibiting any one department from the exercise of the powers of either of the others, the legislature may not impose upon the courts the performance of nonjudicial duties, nor delegate to them any legislative power.

"The legislature may delegate a part of its power over local subjects to municipal corporations, county boards and other public bodies within the legislative classification of departments, but not to either of the other departments.

"Questions of public policy, convenience and public welfare, as related to the organization, incorporation, boundaries, powers and government of electric light, heat and power districts, are, in the first instance, of purely legislative cognizance, and may not be referred to the courts for determination.

"The legislature, having declared its policy and determined the facts and conditions which must form the basis for the organization, incorporation, powers and government of an electric light, heat and power district, or other public body, may vest authority in the courts to determine whether or not the law has been complied with, as a condition upon which such organization shall come into being. In such case the court does not adjudicate upon the necessity or political propriety of forming the corporation, and hence does not exercise any political function." See, also, Burnett v. Greene, 97 Fla. 1007, 122 So. 570, 69 A. L. R. 244, and annotations, p. 266.

In the light of the foregoing, we conclude that the act

does not contravene Article II, section 1, or Article V, section 1, Constitution of Nebraska.

Defendants, relying upon Elliott v. Wille, 112 Neb. 86, 200 N. W. 347, and Rowe v. Ray, 120 Neb. 118, 231 N. W. 689, 70 A. L. R. 1056, argued that the act delegated to a group of non-official individuals authority to create the district and fix its boundaries, thereby contravening Article II, section 1, and Article III, section 1, Constitution of Nebraska, and violating the rule that: "The legislature may not delegate to private individuals either legislative or judicial functions." Defendants also argued that the act contravened Article I, section 24, Constitution of Nebraska, by limiting the right of appeal from creation of the district, and contravened Article I, section 3, Constitution of Nebraska, and Article XIV, section 1, Constitution of the United States, which guarantee due process and equal protection of the laws. Such contentions are so interwoven and interdependent that they will be discussed together. In doing so, we conclude that the contentions have no merit.

The cases thus relied upon are entirely distinguishable upon the facts. The first involved the creation of a power district, the latter the creation of a new school district, wherein the primary basis for decision was the holding in Elliott v. Wille, *supra*. By the provisions involved therein, the Legislature attempted to delegate to a few petitioners the power not only to fix the boundaries of the district, but also to determine the electorate to pass upon its creation. In Elliott v. Wille, *supra,* this court held: "A legislative act, which authorizes private individuals to create and fix the boundaries of a district for public improvement, to be paid for by taxes levied on the property within the district, without any provision for determination by a competent tribunal whether the creation of the district and the construction of the improvement will promote public health, convenience or welfare, and without any provision for determination whether the owner's property has been arbitrarily or

unjustly included in the district, or whether his property will receive any benefit from the proposed improvement, is invalid because it authorizes the taking of private property for a public use without just compensation and deprives the owner of his property without due process of law."

It will be noted that in the Reclamation Act petitioners neither had the power to fix the boundaries nor determine the agency of its creation. As heretofore observed, a competent tribunal, the Department of Roads and Irrigation, was provided for therein to meet every constitutional requirement lacking in Elliott v. Wille, *supra*. Also, provision was made for subsequent inclusion of property within the district by petition, after notice and hearing, with opportunity for objections to be filed. Likewise, subsequently, lands not within the corporate limits of any city or village may be excluded or denied exclusion with right of appeal therefrom. Clearly, the act was not a delegation of legislative functions to private persons.

The fact that the act does not expressly confer the right on owners of personal property or owners of real property in a city or village to join in a petition for creation of such a district does not controvert due process or equal protection of the laws.

In Utley v. St. Petersburg, 292 U. S. 106, 54 S. Ct. 593, 78 L. Ed. 1155, it was said: "There is no constitutional privilege to be heard in opposition at the launching of a project which may end in an assessment. It is enough that a hearing is permitted before the imposition of the assessment as a charge upon the land (Chicago, M., St. P. & P. Ry. Co. v. Risty, 276 U. S. 567; Londoner v. Denver, 210 U. S. 373, 378; Goodrich v. Detroit, 184 U. S. 432, 437), or in proceedings for collection afterwards. Hagar v. Reclamation District No. 108, 111 U. S. 701; Winona & St. Peter Land Co. v. Minnesota, 159 U. S. 526, 537; Wells, Fargo & Co. v. Nevada, 248 U. S. 165."

As stated in Patterick v. Carbon Water Conservancy

District, *supra,* relating to the power of the Legislature: "The legislature had the power to create a water conservancy district by its own fiat. It need not have given any individual or group the right to petition for the creation of a district. It was within its discretion to determine what qualification, if any, a petitioner for the creation of a district must have, since the petition for the formation or the formation of the district itself do (does) not affect any property rights. Had the legislature created the district it could have provided for a tax on all property within the district to pay for the costs and maintenance of the project. See In re Proposed Middle Rio Grande Conservancy District, 31 N. M. 188, 242 P. 683, at page 689, in which the court in determining that a provision in its water conservancy act that only resident freeholders could sign the petition for the formation of the district was not unconstitutional quotes with approval the following statement of the California Supreme Court deciding a similar question in the case of In re Bonds of the Madera Irrigation District, 92 Cal. 296, 28 P. 272, 675, 14 L. R. A. 755, 27 Am. St. Rep. 106: ' "It is objected to this, that it is placing in the hands of those not interested the power of imposing a burden upon the owners of the land, who may be a small minority of the electors within that district, or who may even be nonresidents of the district. This, however, is a matter which was addressed purely to the discretion of the Legislature. Whether such a petition should be made by the owners of a fixed proportion of the land, as was required in the reclamation law, or whether there should be any qualification to the petitioners, * * * are questions which were solely for the consideration of the Legislature. * * * It must be observed, however, that this petition has no binding operation, but is merely the initiatory step which gives to the board of supervisors a jurisdiction to act upon the expediency or policy of authorizing the creation of the district." ' " See, also, People ex rel. Setters v. Lee, *supra;* Field v. Barber Asphalt Paving Co., 194 U.

S. 618, 24 S. Ct. 784, 48 L. Ed. 1142; and Beck v. Missouri Valley Drainage District, *supra.*

In Drainage District v. Chicago, B. & Q. R. R. Co., 96 Neb. 1, 146 N. W. 1055, this court said: "As argued by counsel for plaintiff in their brief, if a railroad company is assessed for a benefit arising from the construction of a drainage improvement, and it has notice of the assessment, and a time and place fixed for a hearing, and actually is heard on its objections, and is accorded an appeal to the courts on the justice of such assessment, it occurs to us that such company has had due process of law, and the equal protection of the law, and it is not in a position to complain because it was not summoned into court as a party on the preliminary proceedings for the organization of such district."

The owner of real property in a city or village does appropriately have a right to object by denying the statements in the petition to create the district, and he does have a right to a hearing and appeal therefrom in the same manner as any other owner of real property in the district. True, no provision is made whereby an owner of personal property may object to creation of the district or appeal therefrom, but when taxes or assessments are levied by the district upon his property, he does have a right to object thereto upon the ground that it has been assessed too high or has been erroneously or illegally assessed, and have a hearing thereon, with right of appeal therefrom.

Clearly, a proceeding for the organization of a reclamation district is not a civil case within the meaning of Article I, section 24, Constitution of Nebraska. Halverstadt v. Berger, 72 Neb. 462, 100 N. W. 934. In that regard, as stated in People ex rel. Setters v. Lee, *supra*: "For the greater reason there is no right of appeal, under the constitution, in the matter of the necessity of the improvement district, or the boundaries thereof, because in such matters there is not even a constitutional right to be heard."

In adopting the law, the Legislature declared its public purpose in the creation of such districts as quasi-municipal corporations and agencies of the state, for the benefit of the state as a whole, as it had a right to do within constitutional limits, even though particular advantages are gained by people owning property within limited areas. Board of Directors of Alfalfa Irrigation District v. Collins, *supra*.

Article XV, section 4, Constitution of Nebraska, provides: "The necessity of water for domestic use and for irrigation purposes in the State of Nebraska is hereby declared to be a natural want." A natural want is one absolutely necessary to human existence. Therefore, its legislative conservation and control for such uses is a public purpose.

In Tyson v. Washington County, 78 Neb. 211, 110 N. W. 634, 12 L. R. A. N. S. 350, this court said: "But this court has repeatedly held that the creation of drainage and irrigation districts, and construction of ditches under statutes substantially like that under discussion, are matters of governmental policy falling within the province of legislative discretion, and that such works may be performed at public expense by general tax or local assessment of especially benefited lands, or both, and may be aided by the issuance of bonds to be paid out of the general revenues of the community."

This court has affirmed that the power of taxation for public purposes is an attribute of sovereignty, having its source in the necessities of organized society, and the limits of its exercise depend, in the absence of express constitutional limitations, upon the exigencies of the public. Board of Directors of Alfalfa Irrigation District v. Collins, *supra*; State ex rel. Spelts v. Rowe, 108 Neb. 232, 188 N. W. 107; State v. Cheyenne County, 127 Neb. 619, 256 N. W. 67; State ex rel. Douglas County v. Cornell, 53 Neb. 556, 74 N. W. 59, 68 Am. S. R. 629, 39 L. R. A. 513.

In Leininger v. North American National Life Ins. Co., 115 Neb. 801, 215 N. W. 167, this court said: " 'Due pro-

cess of law,' within the meaning of the constitutional provisions, is not intended to control the power of the state to determine by what process or on what manner of service rights may be asserted or determined, provided such procedure will afford reasonable notice and a fair opportunity to be heard before the courts, at some stage of the proceedings, prior to final determination. Hacker v. Howe, 72 Neb. 385; Chicago, B. & Q. R. Co. v. State, 47 Neb. 549; Pearson v. Yewdall, 95 U. S. 294; Ballard v. Hunter, 204 U. S. 241; Campbell v. State, 171 Ind. 702.

"Personal service is not necessary to constitute due process of law. The legislature may prescribe 'a kind of notice by which it is reasonably probable that the party proceeded against will be apprised of what is going on against him.' Hurley v. Olcott, 198 N. Y. 132, 28 L. R. A. n. s. 238."

In In re Bonds of Madera Irrigation District, 92 Cal. 296, 28 P. 272, the due process clause was involved. Therein the court pointed out that the mere forming of a corporation such as an irrigation district, was not a taking of property without due process. In the opinion it was said: "In the absence of constitutional restriction, it would be competent for the legislature to create such public corporation, even against the will of the inhabitants. It has as much power to create the district in accordance with the will of a majority of such inhabitants. It must be observed that such proceeding does not affect the property of any one within the district, and that he is not by virtue thereof deprived of any property. Such result does not arise until after delinquency on his part in the payment of an assessment that may be levied upon his property, and before that time he has opportunity to be heard as to the correctness of the valuation which is placed upon his property, and made the basis of his assessment. He does not, it is true, have any opportunity to be heard, otherwise than by his vote in determining the amount of bonds to be issued, or the rate of assessment with which they are to be paid; but in this particu-

lar he is in the same condition as is the inhabitant of any municipal organization which incurs a bonded indebtedness, or levies a tax for its payment. His property is not taken from him without due process of law, if he is allowed a hearing at any time before the lien of the assessment thereon becomes final."

Also, as stated in Burgess-Nash Bldg. Co. v. City of Omaha, 116 Neb. 862, 219 N. W. 394: "A statute which authorizes the assessment of special benefits accruing to property by reason of the construction of a public improvement, and which affords to the property owner, at some stage of the proceedings, notice and an opportunity to be heard before the special assessment is levied, and with an opportunity to appeal from the body levying the assessment to the district court, if the property owner feels aggrieved, does not violate the 'due process' clause of the Fourteenth Amendment to the federal Constitution."

As provided by the act, a general levy of class A taxes upon all tangible property in the district, or an issue of bonds, cannot be made until such propositions have been submitted to and approved by a majority of the electors within the district at an election held for that purpose. Such a tax in any event is limited to three mills, although an aggregate of four mills may be levied on lands not assessed under classes B, C, and D, in the event of special benefits accruing to such lands by reason of the recharging of ground waters. Under authorities heretofore cited, a general tax for public purposes, such as that involved in the case at bar, does not contravene any provision of the Constitution.

No assessments can be levied under classes B, C, and D, unless petitions for water supply services are filed with the board of directors of the district. When such petitions are granted, the subsequent water services rendered or supplied, and resulting assessments therefor, are contractual in character, and do not contravene due process. Further, under the provisions of sections 46-544

and 46-554, a hearing is provided whereat any person whose property is taxed or assessed may appear and show cause why the proposed assessment should not or could not be legally made, or that it is unjust, with right of appeal therefrom. It is elementary that when notice, hearing, and right of appeal are provided, due process is fully satisfied.

Contrary to defendants' contention, section 46-554, does not violate due process by requiring a party appealing to file a cost bond with the clerk of the district court in an amount not exceeding $200, and imposing liability upon such appellant for costs if the finding of the court is not more favorable to him than the finding of the board. There is nothing discriminatory in such a provision, but it is based upon sound reason and classification. Certainly the district would be liable for costs as any other litigant, if it were unsuccessful in the appeal. It is elementary that no constitutional provision prohibits the Legislature from prescribing reasonable rules and regulations such as that involved as a prerequisite for review of any cause by appeal. In re Estate of Mathews, 125 Neb. 737, 252 N. W. 210. Statutes requiring appeal bonds are ordinarily held to be a valid exercise of legislative power since they do not restrict or deny the right of appeal but merely regulate the manner of exercising it. 4 C. J. S., Appeal and Error, § 502, p. 970; Hier v. Anheuser-Busch Brewing Assn., 52 Neb. 144, 71 N. W. 1005.

Contrary to defendants' contentions, section 46-544, authorizing a charge upon lands not included within classes B, C, and D, but which receive special direct benefits from recharging of ground waters, does not authorize an arbitrary or confiscatory taking of private property without due process of law. There can be no levy of assessments on such lands if they are already assessed under classes B, C, or D, as provided in sections 46-545 to 46-550, and there can be no special levy of assessments unless the land actually receives direct special benefits by reason of recharging ground waters from the district's

works, and the levy under this section and all other sections cannot exceed in the aggregate four mills. Further, before such assessment can ultimately be made, there is provision for notice, hearing, and appeal therefrom, as governed by section 46-554, which certainly satisfies due process.

Contrary to defendants' contentions, sections 46-545 to 46-553 do not violate due process. They simply provide that where an application is made for the contractual purchase of water services under classes B, C, or D, notice shall be given and hearing had upon the application, which, in its discretion, the board of directors may accept or reject, depending upon whether or not they deem it for the best interests of the district to do so. It will be noted that the board of directors are public officers, charged with the duty of managing the business and affairs of a quasi-municipal public corporation in the promotion of the public welfare. In the absence of constitutional limitations, the Legislature has the power to create or authorize the creation of such a district to aid in the administration of public affairs, and endow its officers with such powers as it may deem necessary to manage such business affairs of the district, without providing for review thereof by appeal. To so provide would place managerial affairs of the district in the hands of courts rather than the board of directors. The foregoing sections simply involve a matter of good business and managerial judgment upon the question of whether or not the district should contractually sell water services to other people for prescribed purposes. Such procedure does not come within the prohibition of Article I, section 24, Constitution of Nebraska. Should they refuse to enter into such contracts, the remedy of an applicant, if he deems that the business affairs of the district are not properly administered, is with the Legislature or the qualified electorate of the district, or by other appropriate legal proceedings, rather than by review of such refusal by courts.

The trial court construed section 46-559 in conformity with the contention of defendants, as set forth in paragraphs 8, 9, and 10 of the decree. Plaintiffs acquiesced in that construction, so concede in their brief and argument, and have taken no cross-appeal. Since defendants insist only upon the construction given that section by the trial court, we are not required to discuss the matter further than to say we conclude that the trial court properly construed it.

For the reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.