REQUESTED BY: Dear Senator:
You have submitted to us a copy of LB 192, and have asked our opinion as to its constitutionality. You have not pinpointed and particular areas or provisions which you want us to examine, but ask for a general opinion as to the entire bill. Since this bill, while not very lengthy, is quite complex, we cannot, under the circumstances, focus very clearly on the subjects which may be troubling you.
The general purpose of the bill is to provide for a separate income tax to finance public education. We believe it is constitutionally permissible to have such a tax for such purpose. In Nebraska Mid-State Reclamation Districtv. Hall County, 152 Neb. 410, 41 N.W.2d 397 (1950), the court said:
 "The court has affirmed that the power of taxation for public purposes is an attribute of sovereignty, having its source in the necessities of organized society, and the limits of its exercise depend, in the absence of express constitutional limitations, upon the exigencies of the public. . . ."
We are aware of no constitutional provision prohibiting a special income tax to finance public education, and in the absence of such provision we conclude that the Legislature could, in its discretion, provide for such a tax.
LB 192 bases the tax therein provided for on adjusted gross income, as defined in the Internal Revenue Code of 1954, as amended. We believe this is authorized by Article VIII, Section 1B of the Constitution, which provides that the Legislature may adopt an income tax law based upon the laws of the United States. There is nothing to indicate that this authorization is limited to the general state income tax.
Section 3 of the bill uses `adjusted gross income,' as defined by section 62 of the Internal Revenue Code of 1954, as amended, as the starting point for the computation of the tax. It then provides for exemptions for the taxpayer and his spouse (but none for dependents), with additional exemptions for blind or disabled persons. The section then provides that to `this figure' shall be added the amount of certain deductions taken. Although it is not entirely clear, we take `this figure' to mean adjusted gross income less allowable exemptions. The deductions itemized, which are added to `this figure' include charitable contributions and gifts. As we read the bill, together with section 62 of the Internal Revenue Code, this appears to be clearly unconstitutional.
The problem is that `adjusted gross income' as defined by section 62 of the Internal Revenue Code is computed prior to the taking of regular deductions, including charitable contributions and gifts. Therefore, a taxpayer who itemizes his deductions for federal income tax purposes, and who made charitable contributions, not only does not have his tax liability under this income tax decreased, but has it increased.
In other words, by adding the charitable contribution to adjusted gross income, from which it had not been previously deducted, the taxpayer would be paying a tax on a contribution, rather than on income. Obviously this is not what the introducer of the bill intended, and it is clearly unreasonable and arbitrary classification.
The other deductions mentioned in section 3 which are to be added back in have, we believe, already been deducted in the federal return for determination of adjusted gross income, so requiring them to be added back does not present the constitutional problem that charitable contributions do.
Section 3(4) provides that adjusted gross income for nonresidents shall be limited to income derived from sources within the State of Nebraska. We assume, therefore, that deductions to be added back in under section 3(1) should not, for a nonresident, include deductions taken in connection with income derived outside the state. We find nothing in the bill, however, which clearly expresses this idea.
Section 5 establishes the Corporate and Nonresident School District Income Tax Fund, into which goes all of the tax collected from nonresident individuals, corporations, trusts, estates, and any resident individuals who fail to designate the school district in which they reside. If the taxpayer designates the school district he lives in, his tax is collected by the Revenue Department and paid to the school district. See section 9. Section 8(5) provides that the rate for a resident taxpayer who fails to designate the school district he resides in shall be the highest rate computed for any school district under the act.
While it would seldom be to the advantage of a taxpayer to deliberately fail to designate his school district, we question the propriety of permitting a taxpayer, by any means, to control where his tax money shall go, and divert it from the school district which should receive it. Furthermore, there might be situations where it was to the taxpayer's advantage to fail to designate his school district, if he happened to reside in more than one district, and the combined tax of both districts exceeded the highest rate for any single district. In any event, it would operate to divert tax revenues from a school district into a separate fund, to the disadvantage of the school district and the taxpayers therein. We think it is improper.
Section 13 of the bill requires the treasurer or the county clerk to report to the Department of Revenue the names and addresses of all persons residing in the county who are or may be subject to the provisions of the act. This seems to be unconstitutionally vague and uncertain, because it fails to specify who has the ultimate responsibility. Each may fail to comply, saying the other should do it. One or the other, or both, should be required to comply.
Further, the bill is unclear as to how the list shall be compiled. Neither the treasurer nor the clerk has any comprehensive list of residents of the county. The names of persons filing personal property tax returns might be furnished, and perhaps those paying real estate taxes. The two officials involved might have some other lists, also, but we believe that the bill should specify what sources are to be used, so as not to leave an impression that the treasurer and clerk are to make an annual census of the county.
Section 18 of the bill provides that the act shall become operative on January 1, 1978. This, we suppose, is a way of saying that it shall be retroactive to that date. It obviously cannot be in effect before it passes. The bill contains no emergency clause, so, as it presently reads, cannot become effective until three months after the adjournment of the Legislature. However, section 13 requires the treasurer or county clerk to report the names and addresses of potential taxpayers by March 30, 1978, long before the bill will be effective.
Section 14 requires the first payment of tax be made on October 15, 1978. As we understand sections 3 and 4 of the bill, the tax is to be calculated on the basis of income received during a calendar year, or perhaps a fiscal year, although we find no mention of fiscal year in the act. If the tax is to be calculated on 1977 income, we find no provision so informing us. If it is calculated on 1978 income, how can a return be prepared and filed in October 1978? There is no indication that the required October 15 filing is to be for an estimated tax. We are unable to tell what is intended and required.
Section 13(2) provides that all persons or legal entities shall file a return, including those who do not file an income tax return under other provisions of law. Since the tax is calculated on the basis of federal law, and adjusted gross income is the starting point for completion of the tax, it will be difficult, at least, for persons who do not file federal income tax returns to prepare a return under the bill. At the very least, the Revenue Department will have to furnish all of the preliminary schedules, comparable to schedules B, C, D, E, etc. of the federal return, in order to enable such a person to determine his adjusted gross income.
Furthermore, `all persons' would include those with no income at all, and even children. Children with incomes are required to file income tax returns, and presumably, under the literal language of the bill, those without incomes would also be required to do so.
We have made only a somewhat cursory examination of the bill. The method of determining tax rates, the distribution of the Corporate and Nonresident School District Income Tax Fund, and other provisions of the bill are complex, and will require detailed study by budgetary and accounting experts. We have not attempted to fully analyze these fields to determine whether there are problems of uncertainty or inconsistency therein.
There are, in any event, numerous areas of uncertainty and inconsistency in the bill, and some provisions which would be difficult to sustain against constitutional attack.